# JUNE 13, 1934

### FRANK BROWN v. THE STATE.

No. 16688. Delivered May 23, 1934.
State's Rehearing Denied June 13, 1934.

The opinion states the case.

*Stephen & Williams,* of Benjamin, and *Wm. B. Combest,* of Paducah, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin for the State.

CHRISTIAN, JUDGE.—The offense is theft of cattle; the punishment, confinement in the penitentiary for two years.

Henry Craig v. The State, *Opinion No. 16,687, this day delivered, is a companion case.

L. C. Moorhouse had some cattle in McFaddin's river pasture. He had last seen his cattle about the 15th of October, 1932. On the 5th of November, 1932, he found a cow and a calf belonging to him in a pen on the Craig ranch. It appears that the McFaddin pasture adjoined the Craig ranch. Paul Clifford, who was in charge of the Craig ranch, testified that he saw appellant and Henry Craig in possession of Mr. Moorhouse's cow and calf on the 5th of November, 1932; that at the time said animals were with some other cattle which were being driven by appellant and Craig. According to his version, he and Frank Gilliland took up a position on a hill from which they had a good view of the surrounding country. They observed two men driving some cattle about three-quarters of a mile west of them. They were coming from the direction of McFaddin's river pasture. However, they were some distance away from the McFaddin pasture, and were in the Craig pasture when they were first seen by the witnesses. Clifford and Gilliland followed the parties for some distance until they reached a gate going into the Brown pasture. When the witnesses were within sixty steps of appellant and Craig, they (appellant and Craig) left the cattle and rode away. Later the witnesses went to the McFaddin pasture and observed some tracks which showed where some cattle had come out. They also saw the tracks of horses. Some time later inside the Craig pasture not far from the fence they found a rope which one of the witnesses testified looked like a rope belonging to Henry Craig. The tracks appeared to have gone in the same direction the witnesses had observed the cattle being driven.

Testifying in his own behalf, appellant made statements raising the issue of alibi. He introduced several witnesses who gave testimony supporting his defense.

Appellant timely and properly excepted to the charge of the court for its failure to submit an instruction on the law of circumstantial evidence. We think the trial court fell into error in declining to amend the charge. There was no direct

evidence that appellant took the cattle from the possession of Mr. Moorhouse in the McFaddin pasture, where they were ranging. It is true that the State's evidence showed appellant to be in possession of the cattle in the Craig pasture. However, in cases of theft proof of possession of property recently stolen, which is unexplained, or proof of such possession explained when the explanation does not admit the taking of the property from the person in whom possession is laid, is but a circumstance, and if there is no direct evidence of such taking a charge on circumstantial evidence is required. Branch's Annotated Penal Code, sec. 2478; Martin v. State, 24 S. W., 512. We quote from Branch's Annotated Penal Code, supra, as follows:

"If the main fact is proved as a matter of inference from other facts in evidence, the case rests wholly, in a legal sense, upon circumstantial evidence. In cases of theft the main fact to be proved is the taking from the possession of the person in whom possession is laid, and if there is no direct evidence of such taking—the main fact—a charge on circumstantial evidence is required."

In support of the text many authorities are cited, among them being Ward v. State, 10 Texas App., 297; Goode v. State, 120 S. W., 199; Green v. State, 34 S. W., 283.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

MORROW, Presiding Judge.—In Webster's New International Dictionary, the word "juxtaposition" is defined as follows: "A placing or being placed in nearness or contiguity; or side by side; as a *juxtaposition* of words."

As indicated in the State's brief, the expression has been used in several decisions of this State, notably Baldwin v. State, 31 Texas Crim. Rep., 589; Cabrera v. State, 56 Texas Crim. Rep., 141; Davis v. State, 267 S. W., 513. In the Baldwin case, supra, which is stressed by counsel for the State, the facts are as follows:

"The missing hogs were tracked a short distance from the place at which they were taken, and discovered in the possession of defendant and his brother, who were driving them, and

who drove them on home, and butchered them. While no witness saw defendant actually take possession of the hogs, yet the criminative circumstances are in such 'juxtaposition to the main fact' that the omission to give the charge was not calculated to injure defendant's right. Montgomery v. State, (Tex. Cr. App.) 20 S. W., 926. The issues of the case were properly submitted by the court in the charge given. The evidence is cogent, and sustains the conviction."

Both the meaning of the word and its use in the decisions support the view that is reflected in the decision of the present appeal, namely, that the circumstances inculpating the accused must be of a degree of cogency which characterize them, as applied to the particular case, as equivalent to direct evidence. Obviously, an analysis of each case is incumbent upon the court, both the trial and the appellate, to determine from the facts in evidence whether the proof is direct or circumstantial. While there seems to be some cases to the contrary, the great weight of authority, as derived from the decisions of this court and others, demands that upon proper request the court should define circumstantial evidence and leave to the jury to determine the guilt or innocence of the accused upon their consideration of the facts in evidence. In the Baldwin case, supra, and most of those which follow it, where the subject of circumstantial evidence was considered, the evidence was such as to impress the trial court, as well as the reviewing court, that the conviction depended not upon circumstantial evidence but upon direct evidence. There seems to the writer no middle ground between direct evidence and circumstantial evidence, and the word "juxtaposition" as used in some of the decisions, means nothing else than that the evidence was in effect direct. Evidence may be partly circumstantial and partly direct and of a nature, therefore, to justify the refusal of a charge on circumstantial evidence. From Tex. Jur., Vol. 18, p. 439, sec. 317, we take the following quotation:

"The terms 'circumstantial evidence' and 'direct testimony' denote different modes in which the facts testified to operate to produce conviction. In contradistinction to the direct testimony of an eye-witness, 'circumstantial evidence' connotes evidence of other and subsidiary facts which are relied upon as being inconsistent with any result other than the truth of the principal fact. It is direct evidence, but of a minor fact or facts of such a nature that the mind is led intuitively, or by a conscious process of reasoning, towards or to the conviction that from those minor facts the facts to be proved may be in-

ferred. In other words, circumstantial evidence is direct evidence as to the facts deposed to but indirect as to the *factum probandum*."

As understood, the evidence in the present case was to the effect that, according to the State's witnesses, the appellant and another were seen on horse back; that certain cattle were in front of them; that the State's witnesses concluded that the parties were driving cattle and that when discovered the parties abandoned them. The cattle were not upon their accustomed range. The appellant made no claim to them. The fact that he was in possession of them seems a deduction or conclusion of the State's witnesses from the circumstances which they claimed to have viewed. Supporting the claim that the cases in which the use of the word "juxtaposition" is used are in conflict with the conclusion announced upon the original hearing is the case of Ward v. State, 10 Texas App., 293, from which the following quotation is taken:

"The second ground for which the judgment is sought to be reversed is that the evidence fails to support the verdict of the jury. After a very careful examination of the statement of facts, we must conclude that if there is a fact proved, not presumed, which reasonably tends or leads to the guilt of the appellant, we have not been able to discover it. The rule dictated by justice and reason requires that the evidentiary facts be proved and not presumed. The conclusion of guilt is presumed from the facts found, but these facts must be *proved*, in the strictest sense; that is, they must be shown to be true by the testimony of witnesses under whose observation they have actually and directly fallen, or the presumption of guilt must be made from leading facts which have been established by inference from the elementary facts of the case. Burrill on Cir. Ev., 136-8.

"Another rule which is approved by all thinking and just men requires that guilt should flow naturally and easily from the facts proved, and be consistent with all of the facts. Sec. 812, rule 4, 1 Stark. Ev. 561-573."

The language of this court, speaking through Judge Lattimore, in the case of Lockhart v. State, 63 S. W. (2d) 299, (see page 301). is deemed applicable as illustrating the principle upon which the opinion in the original hearing in the present appeal is based. From the Lockhart opinion we quote:

"It occurs to us to be setting a dangerous precedent to hold in such case, because the circumstances were well connected and afforded sufficient evidence to justify a conviction, the

trial court might decline to submit the law of circumstantial evidence when plainly requested so to do, or when an exception to the charge was presented calling attention to the failure to so charge.

"In other words, it seems to us better to lay down the rule that such failure should be held cause for reversal than for us to embark upon the somewhat dangerous course of saying that in this case, that case or the other, we will uphold the court's action, or rather affirm the case upon the theory of the strength of the circumstances. Some sets of circumstances might be stronger than others, and this court would necessarily be called on to speculate more or less as to whether the failure to charge on circumstantial evidence could have resulted in injury to the accused."

Upon the evidence adduced on the trial of the present case, we are constrained to adhere to the conclusion that there was error in denying the appellant's request to instruct the jury upon the law of circumstantial evidence.

The motion for rehearing is overruled.

*Overruled.*

*(Reported on page 456 of this volume.)*