Raymond Lee **WHEAT**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 41690.

Court of Criminal Appeals of Texas.

Dec. 11, 1968.

James H. Miller, Dallas, for appellant.

Henry Wade, Dist. Atty., Malcolm Dade and Camille Elliott, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is burglary; the punishment fixed by the court, seven years.

The sole question presented by appellant's brief is the sufficiency of the evidence to sustain the conviction.

Sarah Harle testified without objection that she was working alone in a governmental office, over which she had control, in a downtown office building on the afternoon in question and that such office had some classified material stored therein and was not open to the public. She stated that she left the office to go to the Ladies Rest Room down the hall and that she manually assisted the automatic closing device and was certain that the door to her office was closed at the time she left. She testified that on her way to the rest room she passed a man standing at the water cooler and because of the strong and peculiar body odor exuding from his person she turned and looked at him. She left the rest room after remaining there for 6 or 8 minutes, and as she rounded a corner en route to her office she saw the same man, the appellant, about two feet from and walking away from her office door. No one else was in the hall. Upon entering her office she observed that her purse which she had left closed on her desk was open and her billfold was missing. She detected the same strong and peculiar odor at and around the desk. With extreme alacrity, she descended to the ground floor of the building and inquired of two telephone repairmen who were talking in the lobby if they had seen a man fitting appellant's description leaving the building and was informed that such a man had just that moment departed. She and a telephone man stepped to the door and she saw appellant walking away from the building. She asked the telephone man to arrest appellant for having stolen her bill-

fold and he replied that he could not do that but he would follow the appellant until he could get the attention of a policeman. She identified appellant when he was returned by a policeman and identified her empty billfold.

H. D. Allen, the alert telephone man, testified that his attention had been directed to a man leaving the building moments before Mrs. Harle descended to the lobby by a distinct body odor emanating from his person. He stated that he followed appellant, at Mrs. Harle's request, along an almost empty street until appellant entered the Santa Fe Building, that during the course of the trip appellant tried to open many doors but found them all secure and that upon their joint arrival he asked a Security Guard at such building to detain appellant, and that upon the arrival of the police a search of appellant revealed a number of "wadded bills" in each of his pockets.

Officer Lamont testified that upon his arrival at the building where appellant was being detained he immediately discovered that appellant had "a very strong body odor" and that a search of his person revealed "$71.00 in various bills, wadded up in all of his pockets." After placing appellant under arrest he went to the building where Mrs. Harle had her office and there, at the bottom of a utility shaft which had an opening on each floor, he found a billfold and nearby several identification cards bearing Mrs. Harle's name. He turned the billfold over to the crime lab.

It was shown by fingerprint experts that appellant's thumb print was found on a plastic folder inside the billfold.

Appellant, testifying in his own behalf, stated that he had come down town on the day in question to see his draft board but had run into his friend Arthur Harris and they had gone to the county jail to visit named friends and then to the building in question where he waited in the lobby while Harris went upstairs in the elevator. He testified that after some time he inquired of the lady elevator operator as to which floor she had carried a "colored male" and upon receiving her reply asked her to take him to the 7th floor. He said that he was unable to find Harris on the 7th floor (where Mrs. Harle's office was located) but later met him in the stairway where Harris showed him a billfold from which he took some money and offered appellant the credit cards. Appellant stated that he declined the credit cards and threw the billfold in the utility shaft. He was badly impeached by testimony he had given at some prior hearing relating to this same matter and admitted a prior misdemeanor conviction for theft and a prior burglary conviction.

Appellant called Harris who was confined on a charge of "attempted robbery" and he attempted to corroborate appellant's account of the day's events; but there were glaring inconsistencies in the testimony of the two. Harris denied that he found any money in the billfold. He also admitted a prior conviction for Robbery.

The diligent prosecutors called the elevator operator who had been on duty at the building on the day Mrs. Harle's billfold was taken and she testified that she carried no "colored male" up in her elevator on the "lull" afternoon in question. They further called the custodian of the jail records and he testified therefrom that neither Harris or appellant had visited the jail that day and that the named inmates who appellant stated he had visited were not prisoners on the day in question. They even called the office manager of a firm where appellant had said he had been employed who testified from his company records that appellant had never worked for such company. They also called the other elevator operator at the building who testified that she was on a 30 minute break during the time immediately preceding the theft of Mrs. Harle's billfold. They further called the detective who talked to appellant and he denied that he had offered to charge appellant with two misdemeanor thefts in exchange for a plea of guilty as

appellant had volunteered in his direct examination.

From the above it is abundantly clear that the jury were justified in declining to accept appellant's and Harris' conflicting versions of what occurred. And the facts are in such close juxtaposition one to another that only one logical conclusion may be drawn therefrom and that appellant's guilt is evident. Landry v. State, 156 Tex. Cr.R. 350, 242 S.W.2d 381.

The judgment is affirmed.