Jerry Leonard **FARRIS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 45833.

Court of Criminal Appeals of Texas.

May 16, 1973.

Rehearing Denied July 3, 1973.

Fred M. Heacock, Houston, for appellant.

Carol Vance, Dist. Atty., James C. Brough and I. D. McMasters, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

The appeal is taken from a murder conviction wherein the punishment was assessed at 60 years.

At the outset, the appellant complains of the court's failure to grant his special requested charge on the law of circumstantial evidence.

The alleged offense occurred at the Northline Motor Hotel at 5619 Airline Drive in Houston between 11 and 12 p. m. on May 7, 1969. Nancy Marie Bell testified she and her husband, the deceased, Willie Nash Bell, had managed the hotel for about 10 months. She related that at the time in question she had retired for the night and her husband was seated in the living area next to the office when she heard "a kicking" at the front door and she later heard a noise and then heard her husband holler, "Help." She got out of bed and obtained a .22 caliber pistol and entered the living room. She heard a noise in the office which could have been shots, then the door to the office opened and the appellant entered the living room armed with a pistol and carrying her hus-

band or holding him up.[1] Her husband appeared to be unconscious "or maybe even dead." His "head was hanging down and so were his arms." Another man, an elderly one, was behind the appellant and he was also armed. Both men began shooting. Mrs. Bell returned the fire, shooting at the appellant who was holding her husband. Her husband was dropped to the floor and the two men fled from the building. She called the telephone operator and asked for help. The police and an ambulance arrived and she was taken to a hospital for treatment of the three wounds she received.

She further testified that she did not see anyone shoot her husband.

Dr. Joseph Jachimczyk, a medical examiner, testified that he performed the autopsy on the body of the deceased. He related a .22 caliber bullet entered the neck and moved upward, striking the lower jawbone, and lodged in the mouth of the deceased. This wound, he explained, would not ordinarily have proven fatal. He discovered another .22 caliber bullet entered the left chest two inches below the left armpit and penetrated the left lung, the root of the aorta, and the right lung. It was this wound, he revealed, that was the fatal wound. He further testified that "neither was a contact wound . . . From the appearance, it would indicate the weapon from which the bullets came was twenty inches or further away."

Officer Tovar of the Houston Police Department, acting in response to a police broadcast, stopped a Volkswagen automobile driven by Clifford Glenn Fountain about 1 a. m. on May 8, 1969. The appellant, Jerry Farris, was in the front passenger seat and his father, Iwana Farris, was seated in the rear seat. The officers found a .22 caliber pistol (State's Exhibit No. 10) between the two front seats and

found a .38 caliber pistol in the rear of the car; a box of .22 caliber ammunition was found on the appellant and two .38 caliber shells were found in Iwana Farris' pocket. Iwana Farris was shown to be suffering from a bullet wound in the back.

Randy Sillivan, a ballistics expert, testified that the bullet found in the deceased's mouth could not have been fired by State's Exhibit No. 10, the weapon found near the appellant's position in the car when he was arrested. He related he could not definitely make an identification of which gun had fired the other bullet found in the deceased's body, but that he was able to determine that it had not been fired from State's Exhibit No. 5, the pistol used by Mrs. Bell.

Testifying for the defense, Iwana Farris testified that on the night in question he and the appellant went to the hotel office, asked if there was a vacancy and then if Alton Daniels lived there; that the deceased told "me to get out, you son-of-a-bitch and stay out. I don't want you or him either one here." After some "cussing," the witness related he began scuffling with the deceased and that a lady opened a door and shot him (the witness). He admitted that he struck the deceased in the head with a pistol and may have shot him, but claimed, if he did, he was using a .22 caliber pistol at the time and that his son, the appellant, had the .38 caliber pistol and they later exchanged weapons in the car prior to their arrest. He related that the appellant never had altercation with Bell; did not scuffle with him or have him around the neck, and that he alone had struggled with the deceased. He acknowledged that at the time of the alleged offense he was on parole, which had since been revoked, and that he had pleaded guilty to the charge of murdering Bell and had been assessed a punishment of 65 years.

1. At one point, Mrs. Bell testified that appellant had one arm around her husband's neck and another arm under her husband's shoulder. At another point, she related appellant had an arm around his neck and had a pistol in his other hand.

In support of his claim that he was entitled to the requested charge on the law of circumstantial evidence, appellant calls attention to the fact that Mrs. Bell testified that she did not see anyone shoot her husband, that the bullet lodged in his mouth came from her gun, and that the State was not able to show that the other bullet found in the deceased's body came from the .22 caliber pistol found in the car at the time of his arrest.

On the other hand, the State contends the testimony of Mrs. Bell and the arresting officer and the doctrine of close juxtaposition makes a charge on circumstantial evidence unnecessary. The State relies upon Riggins v. State, 468 S.W.2d 841 (Tex.Cr.App.1971); Smith v. State, 475 S.W.2d 238 (Tex.Cr.App.1972); Turner v. State, 462 S.W.2d 9 (Tex.Cr.App.1970); Wheat v. State, 434 S.W.2d 691 (Tex.Cr.App.1968); De La O v. State, 373 S.W.2d 501 (Tex.Cr.App.1964), and Barker v. State, 168 Tex.Cr.R. 513, 329 S.W.2d 889 (1959). See also Galvan v. State, 461 S.W.2d 396 (Tex.Cr.App.1971); Oltiveros v. State, 474 S.W.2d 221 (Tex.Cr.App.1971); Roberts v. State, 489 S.W.2d 893 (Tex.Cr.App.1973).

The record clearly shows Mrs. Bell heard noises which could have been shots after her husband had gone into the hotel office. When the appellant entered the living room area where she was, he was carrying her husband who was limp, unconscious or already dead. There was an exchange of gunfire between Mrs. Bell and the appellant and his father. At no time did Mrs. Bell see anyone shoot her husband who was dropped to the floor when the appellant fled. Neither wound was a contact wound. One of the bullets in the deceased's body came from Mrs. Bell's pistol. It was not possible to identify the weapon from which the fatal bullet was fired.[2]

The indictment charged the appellant killed the deceased with malice aforethought "by shooting him with a gun." This was the main fact to be proved.

". . . If the main fact in a case is to be proved as a matter of inference from other facts in evidence, the case rests wholly in a legal sense on circumstantial evidence. The fact that circumstances may strongly point to a person accused of a crime does not relieve the court of the duty of charging the law of circumstantial evidence in a case where the question of guilt is an inference or presumption deducible from circumstances in evidence. . . ." 31 Tex.Jur.2d Instructions § 122, p. 680–681.

See also Haney v. State, 438 S.W.2d 580 (Tex.Cr.App.1969), and cases there cited; Blankenship v. State, 481 S.W.2d 147 (Tex.Cr.App.1972).

In Crawford v. State, 128 Tex.Cr.R. 272, 82 S.W.2d 957 (1935), this court held that even though the State's evidence led to the "almost irresistible conclusion" that the defendant was guilty of the burglary charged, and "however strong the circumstances may be," if the case is based on "inference and reasoning therefrom," the court must charge on circumstantial evidence.

---

2. The dissent summarizes the facts and then states: "From the above summary there was evidence that the deceased was killed by a bullet fired sometime during the volley of shots between Mrs. Bell and appellant and his father." This conclusion is necessary to the reasoning engaged in by the dissent but the conclusion is not supported by this record or the summary of facts found in the dissenting opinion. Somehow the dissent assumes that during the said volley of shots appellant, who was firing at Mrs. Bell, by accident or mistake, turned aside and fired a bullet under the left armpit of the deceased whom he was holding up without the same being a contact wound and without being seen by Mrs. Bell who was only a few feet away, and without any showing that the appellant's gun was the fatal weapon. Having missed the turn in the road, the dissent never gets back on the right track.

All of the evidence adduced was direct evidence as to the facts deposed to but indirectly as to the factum probandum of the alleged offense.

No one testified that the appellant shot the deceased.

Just when the fatal bullet was fired is not shown by the evidence. Mrs. Bell expressly testified that she did not see anyone shoot her husband. One of the bullets in the deceased's body came from her pistol, and the State was not able to show that the other bullet was fired from either pistol found in the car when appellant was arrested.

We conclude that the court clearly erred in failing to respond to the timely presented special requested charge on circumstantial evidence.

For the reason stated, the cause is reversed and remanded.

DOUGLAS, Judge (dissenting).

The majority opinion reverses this conviction because of the trial court's failure to grant appellant's requested charge on circumstantial evidence. The evidence was direct. One of the principals testified that he shot the deceased. I dissent.

The record reflects that the offense occurred at the Northline Motor Hotel in Houston between 11:00 and 12:00 p. m. Nancy Marie Bell testified that she and her husband, the deceased, Willie Nash Bell, had managed the hotel for about ten months. She related that at the time in question she had retired for the evening and that her husband, after locking the office door, was seated in the living area next to the office reading. She then heard a kicking at the front door of the office. Her husband got up to answer the door and she later heard a muffled noise and then heard her husband call, "Help." She got out of the bedroom and grabbed a .22 caliber pistol from her bedside table and went into the living area. At this time she heard a noise in the office which could have been shots, then the door opened between the office and the living area, and appellant entered dragging her husband in an "arm lock" around the neck with one arm. He was carrying a pistol in the other hand. Her husband, the deceased, appeared to be unconscious or dead. Another man, an elderly one, was behind the appellant and he was also armed. Both men began shooting as soon as they saw her. Mrs. Bell, after struggling to get her gun out of the holster, returned the fire, shooting at the man holding her husband. During the exchange of shots, Mrs. Bell was hit three times, once in the shoulder. Her husband was dropped to the floor and the two men fled from the building. She called the telephone operator and asked for help. The police and an ambulance arrived and she was taken to a hospital.

Dr. Joseph Jachimczyk, a medical examiner, testified that he performed the autopsy on the body of the deceased. He related a .22 caliber bullet entered the neck and moved upward, striking the lower jaw bone, and lodged in the mouth of the deceased. This wound, he explained, would not ordinarily be fatal. He discovered another .22 caliber bullet entered the left chest two inches below the left armpit and penetrated the left lung, the root of the aorta, and the right lung. In his opinion, this was the fatal wound.

Officer Kovar of the Houston Police Department, acting in response to a police broadcast, stopped a Volkswagen automobile driven by Clifford Glenn Fountain. The appellant, Jerry Farris, was in the front passenger seat and his father, Iwana Farris, was seated in the rear seat. The officers found a .22 caliber pistol (State's Exhibit No. 10) between the two front seats and found a .38 caliber pistol in the rear of the car; a box of .22 caliber ammunition was found on the appellant and two .38 caliber shells were found in Iwana Farris' pocket.

Randy Sillivan, a ballistics expert, testified that the bullet found in the deceased's mouth probably was not fired by State's Exhibit 10, the weapon found near the appellant's position in the car when he was arrested. He related he could not definitely state that State's Exhibit No. 10 had fired the other bullet found in the deceased's body.

Called by the defense, Iwana Farris testified that on the night in question he and Jerry, his son, went to the hotel office, asked if there was a vacancy and then if Alton Daniels lived there; that the deceased told "me to get out, you son-of-a-bitch and stay out. I don't want you or him either one here." After some cursing, the witness related he began scuffling with the deceased and that a lady opened a door and shot him (the witness). He also testified that he struck the deceased in the head and shot him with the .22 caliber pistol, and that Jerry had the .38 caliber pistol. He also stated that they later exchanged weapons in the car prior to their arrest. He related that the appellant did not have an altercation or scuffle with Bell. He also testified that Jerry, the appellant, was behind the counter during the scuffle. Iwana Farris further testified that during the encounter with the deceased:

"We was pulled up together and I dropped my gun. When I went down to get it, he went down with me, I'd say almost on top of me and when I come up, I come up shooting. That's probably when I hit him.

" * * *

"I shot him in the side, that's where I shot him.

" * * *

"He was still on his feet when I left there."

He acknowledged that at the time of the alleged offense he was on parole, which had since been revoked, and that he had pleaded guilty to the charge of murdering Bell and had been assessed a punishment of sixty-five years. His prior convictions dating back to 1938 for burglary and theft, forgery and mail theft, car theft, "safe burglary" and robbery were shown.

Appellant contends that he was entitled to a charge on the law on circumstantial evidence. He argues that his contention is supported by the fact that Mrs. Bell testified that she did not see anyone shoot her husband, that the bullet lodged in his mouth came from her gun, and that the State was not able to show that the other bullet found in the deceased's body came from the .22 caliber pistol found in the car at the time of his arrest.

In considering the evidence to determine if a charge should be submitted, all of the evidence, the State's as well as that of the defense, may be considered. From the above summary, there was evidence that the deceased was killed by a bullet fired some time during the volley of shots between Mrs. Bell and appellant and his father.

The doctor's testimony is clear that, of the two bullets found in the deceased's body, it was the bullet in his chest and not in his head which was fatal.

The evidence shows that the deceased was placed in a perilous position by appellant during the commission of a felony. The testimony of Mrs. Bell reflects that both the appellant the older man, Iwana Farris, were firing at her at close range with pistols. One of the bullets hit her in the shoulder, one in the leg and one in the thigh. Article 45, Vernon's Ann.P.C., provides:

"The intention to commit an offense is presumed whenever the means used is such as would ordinarily result in the commission of the forbidden act."

There appears to be some doubt in the record as to which gun fired the shot which killed the deceased; however, it is immaterial.

Article 42, V.A.P.C., provides:

"One intending to commit a felony and who in the act of preparing for or executing the same shall through mistake or accident do another act which, if voluntarily done, would be a felony, shall receive the punishment affixed to the felony actually committed."

The evidence shows that the appellant dragged the deceased into the living area near the office of the hotel, where he had no right to be, and started firing at Mrs. Bell while her gun was still in the holster. The appellant was in the act of committing a felony when the deceased was killed.

In Taylor v. State, 41 Tex.Cr.R. 564, 55 S.W. 961 (1900), where Taylor and three others, in the attempt to rob a train, boarded the engine, took out the engineer and fireman, placed the latter in front of the express car, and then demanded that the express agent open the door. A passenger appeared on the platform of another car and an indiscriminate shooting between the robbers and passenger began in which the fireman was killed, a ball passing through his body. The evidence was conflicting as to whether the ball entered from the side of the passenger or the robbers. This Court held that since the death of the fireman was directly caused by Taylor and the others, in placing him in a dangerous place, accused was liable, whether the shot was actually fired by Taylor or the passenger. See also Keaton v. State, 41 Tex.Cr.R. 621, 57 S.W. 1125.

In Miers v. State, 157 Tex.Cr.R. 572, 251 S.W.2d 404, this Court stated that it is the well established rule in this State that in the case of homicide direct testimony from any source that the accused was an actor in bringing about the death of the deceased characterizes the case as one of direct and not of circumstantial evidence. In that case Miers and a companion were attempting to rob the owners of a combination filling station, store and residence. The wife of the deceased testified that deceased "jumped toward my right side. As he got to my right side as he made a grab like that for Miers, who was in back of me, then a second later he jumped backwards to the right side of me in front of me with his hands up like this, and a shot was fired *in the back of me,* and it kind of knocked Mr. Sendemer like that, and he lunged forward and he said, 'Oh, my God, and made a grab, and I heard some tussling back of me." (Emphasis supplied). She also testified that a momentary scuffle ensued behind her, that she looked around and found that Miers was gone, and saw her husband falling to the floor. It was established that Miers' companion shot the deceased though not fatally during the melee. Miers testified that he had only fired a shot to scare the deceased but it did not deter him and deceased grabbed his coat, and that he attempted to hit the deceased with the pistol in order to get loose from him. Miers then stated that deceased got the pistol out of his hand and hit him over the head with the same, causing the pistol to be discharged. In affirming Miers' conviction for death, this Court held that Miers had set in motion the cause which occasioned the death of the deceased, and that his testimony did not present a defense.

Similarly, in the present case appellant set in motion the cause which brought about the deceased's death.

Even though the evidence might not show a robbery was contemplated,[1] it does show a felony offense of assault with intent to murder was committed when they began shooting at Mrs. Bell. Therefore, death resulting from the commission of such felony is murder with malice and both appellant and his father would be guilty as co-principals. See Lopez v. State, 482 S.W.2d 179 (Tex.Cr.App.)

1. At the penalty stage of the trial it was shown that appellant had been convicted for the offense of robbery by assault in another case and served the sentence.

Further, the record at the guilt stage of the trial shows that Iwana Farris was an ex-convict who had been convicted for robbery, a felony involving an act of violence, and was possessing a pistol away from the place of his residence contrary to the provisions of Article 489c, V.A.P.C. Thus, from the evidence, including the defense testimony, Iwana Farris was committing a felony by possessing such pistol. The discussion under Article 42, supra, would apply here. The death of Bell was caused while appellant's father was committing a felony by possessing a pistol away from the premises upon which he lived in addition to the felony of committing an assault to murder upon Mrs. Bell.

If it can be conceived that the evidence was not direct and that a charge on circumstantial evidence should have been given, the refusal to give the instruction would have been harmless error. Article 36.19, Vernon's Ann.C.C.P., provides, in part, that where requirements relating to a charge have not been met ". . . the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. . . . "

The appellant by the testimony of his father, in addition to that of Mrs. Bell, shows that the two men went inside the motel armed with pistols. According to Iwana Farris' testimony, this was for the innocent purpose of renting a room. The jury no doubt gave this testimony the amount of weight due it.

Without belaboring the point, just how could a charge on circumstantial evidence have made a difference in the verdict? How could a different result be reached upon another trial upon the same evidence? Surely if Article 36.19, supra, has any applicability, this is the case for its application.

No reversible error being shown, the judgment should be affirmed.

MORRISON, Judge (dissenting).

I cannot bring myself to agree that a charge on circumstantial evidence was required. DeLao v. State, 373 S.W.2d 501 (Tex.Cr.App.).

I dissent.