Marvin Park SELMAN et al., Appellants,

v.

The STATE of Texas, Appellee.

No. 47104.

Court of Criminal Appeals of Texas.

Feb. 6, 1974.

Rehearing Denied Feb. 27, 1974.

Ray Stevens, Victor R. Blaine, Houston, for appellants.

Carol S. Vance, Dist. Atty., James C. Brough, and George M. Karam, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

DICE, Commissioner.

The appellants, Marvin Park Selman, Jeanette Phillips, Sybil Evelyn Rogers, and

a co-defendant, Samuel G. Burke, were jointly charged by indictment with the offense of unlawfully possessing a narcotic drug, to-wit: marihuana.

Upon a joint trial, each defendant was found guilty by the jury and assessed punishment as follows: The defendant Samuel G. Burke—fifteen (15) years confinement in the Texas Department of Corrections. The defendant Marvin Park Selman—fifteen (15) years confinement in the Texas Department of Corrections. The defendant Jeanette Phillips—seven (7) years confinement in the Texas Department of Corrections, probated. The defendant Sybil Evelyn Rogers—seven (7) years confinement in the Texas Department of Corrections, probated.

From such judgments of conviction the appellants Selman, Phillips and Rogers prosecute this appeal.

Identical briefs have been filed on behalf of each appellant.

We reverse because of the court's failure to charge the jury on the law of circumstantial evidence.

A fair summary of the State's evidence is set out in the State's brief, from which we quote as follows:

"At 10:45 p. m. on April 24, 1971, Officer Norman K. Marriott of the Houston Police Department and his partner, Officer Burgess, received a radio dispatch directing them to go to the bungalow at the rear of the apartments at 6735 Del Rio Street in Houston, Harris County, Texas, to investigate gaming and possible narcotics. At 11:00 p. m., these officers parked their car in front of the apartments and met another police patrol unit, who was also directed to the location. The four officers then walked down common pathways through the apartments to the rear where they stopped at the rear window of the bungalow, which is on the apartment premises. The rear kitchen window faces the rear of the apartments.

"The pathway extends through the apartments, up to the rear of and through the bungalow. The officers did not stop at another apartment unit. Officer Marriott testified that he stood about two feet from the *open* rear window of the bungalow and looked into the lighted kitchen and saw Samuel Burke rolling a cigarette with a substance he obtained from a match box. Officer Marriott further testified that he smelled the strong odor of burning marijuana and saw pills on the kitchen table. He also saw appellants Phillips, Rogers and Selman, in the kitchen with Burke. He identified these individuals at trial. All four officers looked into the window. After observing the suspects, Officers Marriott and Sanders went around to the front of the bungalow and saw Rogers and Phillips coming out the front door. One of the girls hollered, 'Cops', and they ran back into the bungalow slamming the door on the way. The door of the bungalow was open because it did not shut when it was slammed, so the officers followed the girls to the kitchen. Officer Marriott found Burke in the kitchen with the cigarette in one hand, a matchbox in the other, and a pistol in his belt. Both of the girls were apprehended in the kitchen. Officer Burgess, who remained outside at the window, told Officer Marriott that Selman had run into the bedroom. Selman was found hiding in a closet.

"Upon a further search, 31 match boxes containing a green-like substance were found on the kitchen table and 52 white tablets, and 65 red capsules also were found in the kitchen by Officer Marriott. A large amount of money was found on Burke and Selman. Officer Marriott testified that he found particles of burnt marijuana and ashes lying on the kitchen table, and remnants of burnt cigarette butts on the floor and table.

"The bungalow contained an old chair and couch in the living room, a table in the kitchen, and a bed frame without a

mattress in the bedroom. There were no clothes, no dishes, no kitchen utensils; forks, knives, spoons and no other sign people were living there. None of the four persons arrested claimed the bungalow as his address or residence. In fact, all four gave addresses to the police that were different than the address of the bungalow and different from each other."

It was shown that the matchboxes contained 124 grams of marihuana and one matchbox contained 2 blue tablets of Valium.

The court in his charge instructed the jury that by the term "possession" as used meant the actual care, control and management of the property, either alone or acting with another person or persons.

The court also charged the jury on the law of principals.

Appellants did not testify.

To show appellants' guilt, the ultimate fact necessary to be proved was that they, either acting alone or together as principals, possessed the marihuana in question.

No direct evidence was offered by the State to prove this fact.

To the contrary, it is clear that the State relied upon circumstantial evidence to prove possession.

Recently in Crawford v. State, Tex.Cr. App., 502 S.W.2d 768, opinion delivered December 19, 1973, a conviction for the unlawful possession of a narcotic drug was reversed because of the court's failure to charge on circumstantial evidence.

In the Crawford case, the accused was arrested in a house belonging to another and in which the narcotics were found. There were others present and the court charged the jury on the law of principals.

In reversing the conviction, Presiding Judge Onion, speaking for the Court, said:

"This court has for some time held that the distinction between circumstantial evidence and direct evidence is that the latter applies directly to the ultimate fact to be proved, while circumstantial evidence is the direct proof of a minor fact which, by logical inference, demonstrates the fact to be proved. Beason v. State, 43 Tex.Cr.R. 442, 67 S.W. 96 (1902); Brown v. State, 126 Tex.Cr.R. 449, 72 S.W.2d 269 (1934); Ramos v. State, 478 S.W.2d 102 (Tex.Cr.App.1972) (on State's Motion for Rehearing). In the instant case, no witness saw appellant actually possess the heroin. Moreover, the residence where the heroin was discovered did not belong to appellant; thus no question of sole access is raised. Instead, the heroin was found at the residence of another person in which appellant was present at the time of the search. Therefore, the ultimate fact of whether appellant possessed the heroin found was not proved by direct evidence. In the absence of direct evidence, the refusal to grant a requested charge on circumstantial evidence is reversible error. Farris v. State, 496 S.W.2d 55 (Tex.Cr. App.1973).[1]

[1] In *Farris* this court refused to hold that the doctrine of close juxtaposition made a charge on circumstantial evidence unnecessary. *Farris* at 57."

Under the authority of Crawford v. State, supra, and the authorities cited in that opinion, we reverse the judgments of conviction of the appellants because of the court's failure to charge on circumstantial evidence.

The judgments are reversed and the cause is remanded.

Opinion approved by the Court.

DOUGLAS, J., dissents for the reasons set out in the dissent in Ramos v. State, 478 S.W.2d 102 (Tex.Cr.App).