John Paul GRANDISON, Appellant,

v.

The STATE of Texas, Appellee.

No. 48976.

Court of Criminal Appeals of Texas.

Oct. 23, 1974.

Howard B. Law, Dallas, for appellant.

Henry Wade, Dist. Atty. and Ronald D. Hinds, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The appellant appeals from a conviction for murder without malice; the punishment assessed by the court was imprisonment for five years. The appellant first complains of the court's refusal to submit to the jury the appellant's specially requested charge instructing the jury on the law of circumstantial evidence. The failure to submit to the jury the written request for this instruction which was timely made was error that requires reversal of the judgment.

The evidence offered to support the conviction will be summarized. Within a two month period before his wife's death the appellant had threatened to take her life. At about 9:15 p. m. two neighbor boys who were walking past the house where the appellant and his wife lived heard sounds of breaking glass and a sound like someone was falling. They heard a voice they identified as the appellant's say, "Get up. Get your ass up." The boys ran to their nearby home to get their mother who accompanied them back toward the appellant's house. They then heard further "yelling" and a sound like "someone hitting the floor." Several hours later they saw emergency vehicles come to the Grandison's residence.

At approximately 12:30 a. m. the following morning the appellant made a telephone call to Lee Oscar Elder who was a cousin of the deceased. The appellant told Elder that "Jean was either dead or dying." Elder came to the appellant's house and found his cousin, the appellant's wife, dead. He made a telephone call to the police, and officers and an ambulance were dispatched to the scene. Elder found the deceased in bed. She was dressed only in a brassiere and panties. The appellant was fully dressed. Elder said there was no blood or broken glass in the bedroom or in the bathroom.

The medical examiner, Dr. Sturner, performed an autopsy on the body of the deceased. He found six areas of injury on the body. He found a laceration on the back of her head, a laceration on the inside of her upper lip, abrasions on the lower left lip, abrasions on the left side of her neck, on her chest and in the hip area. He testified there could have been a blow to the front part of the deceased's head and then she struck a fixed object with the back of her head. He also testified that there could have been a blow to the front and a blow to the back of the head while the individual was being held by the neck. The doctor concluded that blows inflicted on the deceased on the left side of her neck, the mouth area, and the back of her head, resulted in a hemorrhage in the covering of the brain. Dr. Sturner under cross-examination testified that most of the injuries he observed on the deceased's body could have been caused if she had been intoxicated and had fallen on objects normally found in the bathroom. On redirect examination Dr. Sturner testified:

"Well, the conditions of the injury would indicate that if falls were—having to take place, it would have to be three or maybe four separate falls, and the injuries, in my opinion, are more consistent with a blow having been inflicted on the front of the face while being held with the neck and the resultant blow or fall on the back of the head producing the final hemorrhage."

The autopsy report revealed that the alcoholic content of the deceased's blood was .075%, and Dr. Sturner admitted that it could have been more at 9:30 p. m.

The State argues in its brief that "appellant, in talking to both Lee Elder and witness Watson (investigating police officer), never denied having been alone with the deceased throughout the period during

which the fatal blow was inflicted." There is no testimony that either Elder or Watson asked the appellant if he had been alone with the deceased, and there is no testimony that the matter was ever discussed. The appellant told Elder and the police officer who investigated at the scene *that his wife had not been feeling well and* he told Elder that she had fallen "and hit her mouth" in the bathroom.

The State insists that the charge on circumstantial evidence was not required because the facts proved were in such close juxtaposition to the main fact to be proved as to be the equivalent to direct testimony. It is argued " . . . the 'juxtaposition' rule fits this case like a glove." We disagree. We do not find the following cases cited by the State to be controlling. Landry v. State, 156 Tex.Cr.R. 350, 242 S.W. 2d 381 (1951); Chapin v. State, 167 Tex. Cr.R. 390, 320 S.W.2d 341 (1958); Turner v. State, 462 S.W.2d 9 (Tex.Cr.App. 1969); Riggins v. State, 468 S.W.2d 841 (Tex.Cr.App.1971); Barker v. State, 329 S.W.2d 889 (Tex.Cr.App.1959); Allen v. State, 36 Tex.Cr.R. 381, 37 S.W. 429 (1896); Hale v. State, 164 Tex.Cr.R. 482, 300 S.W.2d 75 (1957); Zilka v. State, 385 S.W.2d 680 (Tex.Cr.App.1965).

As was said in the recent case of Hielscher v. State, 511 S.W.2d 305 (Tex. Cr.App.1974):

"This court has for some time held that the distinction between circumstantial evidence and direct evidence is that the latter applies directly to the ultimate fact to be proved, while circumstantial evidence is the direct proof of a minor fact which, by logical inference, demonstrates the fact to be proved. (Citations omitted).

"And where guilt must be inferred from circumstances in evidence, the trial court has the duty to give a charge regarding the law of circumstantial evidence, and it is not relieved of such duty by virtue of the fact that circumstances may strongly point to the accused.

Blankenship v. State, 481 S.W.2d 147 (Tex.Cr.App.1972)."

The facts in the case at bar are certainly no less compelling in requiring the submission of the requested charge than the following cases which we deem controlling. Hielscher v. State, supra; Eiland v. State, 509 S.W.2d 596 (Tex.Cr.App.1974); Selman v. State, 505 S.W.2d 255 (Tex.Cr. App.1974); Crawford v. State, 502 S.W.2d 768 (Tex.Cr.App.1973); Farris v. State, 496 S.W.2d 55 (Tex.Cr.App.1973).

The judgment is reversed and the cause remanded.

Opinion approved by the Court.