Johnny Ray WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 09 88 325 CR.

Court of Appeals of Texas, Beaumont.

April 26, 1989.

As Corrected May 1, 1989.

Hugh O'Fiel, Beaumont, for appellant.

Tom Maness, John R. DeWitt, Beaumont, for the State.

OPINION

BURGESS, Justice.

A jury convicted appellant of possession of a controlled substance. The jury also

found he was an habitual offender and assessed his punishment at thirty-five years' confinement in the Texas Department of Corrections.

Appellant brings three points challenging the sufficiency of the evidence to support the jury's verdict that he "possessed" certain cocaine rocks found underneath the seat of a police car in which he was riding. Of course, in reviewing the sufficiency of the evidence, an appellate court, viewing all the evidence in the light most favorable to the jury's verdict, must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. State*, 672 S.W.2d 801, 803 (Tex.Crim.App.1984). Where a conviction is based on circumstantial evidence, the evidence must exclude every other reasonable hypothesis except the guilt of the accused. *Johnson v. State*, 673 S.W.2d 190, 195 (Tex.Crim.App.1984).

■ Appellant maintains, in essence, that the state failed to "affirmatively link" him with the cocaine rocks found underneath his seat in the police car. In order to prove a violation of *TEX.REV.CIV.STAT. ANN. art. 4476–15, sec. 4.04(a)* (Vernon Supp.1989) for possession of a controlled substance, the state must first show that the defendant exercised care, custody or management over the substance and, secondly, that he knew what he possessed was contraband. *Humason v. State*, 728 S.W. 2d 363, 364 (Tex.Crim.App.1987). It is not enough that a defendant was present in the vicinity of a controlled substance. *Id.* There must be some independent facts and circumstances affirmatively linking an accused to the contraband in such a manner that it can be concluded he had knowledge of the contraband as well as management or control over it. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App.1985).

■ The state produced at trial the two police officers who were responsible for arresting appellant. Each officer testified that before their shift, they performed a routine procedure of checking their patrol car, including sliding the back seat out to look for objects caught in or under the seat. Nothing was found in or under the back seat at that time. During the course of the day, the officers stopped the car appellant was driving for an expired inspection sticker. After failing to produce a driver's license and proof of liability insurance, appellant was arrested. Appellant's hands were tightly cuffed behind his back, but the cuffs were loosened after he was placed in the right rear passenger seat of the patrol car. The passenger in appellant's car stood outside the car as Officer Godeaux conducted a cursory inventory of the car which took about five minutes. During that time, Officer Simonson turned his back to appellant several times. Appellant was then driven to the jail which was about two minutes away. Officer Simonson who was sitting in the back left seat with appellant noticed appellant "fidgeting" during the ride to the jail. When they reached the jail, Officer Simonson removed appellant from the car and once again slid out the back seat, finding four white crystal rocks, which were later identified as cocaine, under the seat in which appellant was sitting.

Both officers testified that appellant was the only person they took into custody that day. Officer Godeaux testified he could not remember if they had any calls before arresting appellant, but that the car would have been left unattended if they had and that the back seat would not have been reinspected after those periods. Officer Simonson testified that they "probably made some traffic stops earlier in the day" at which time the car would have been left unattended. Officer Godeaux also testified that they stopped for something to eat but locked the doors while in the restaurant. He characterized the area they patrolled as a high-crime area where illicit drugs were prevalent. No one actually saw appellant deposit the drugs in the back seat or found any cocaine on his person.

The state argues that the theory that someone sneaked into the car while it was unattended and stashed cocaine rocks in the seat was not a "reasonable hypothesis" which required the state's rebuttal. However, even accepting this argument, the fact remains that the only evidence con-

necting appellant to the cocaine was his non-exclusive access to the patrol car. In *Humason,* 728 S.W.2d 363, the court of criminal appeals determined evidence insufficient to prove possession of cocaine where there was no evidence that the defendant had sole access to the car, that the cocaine was in plain view, that the defendant was intoxicated, or that the substance had an apparent odor. The case before us is almost exactly on point. Other than appellant's presence in the police car, there were no facts and circumstances affirmatively linking appellant with the contraband. As a result, the evidence is insufficient to sustain appellant's conviction, and his points of error must be sustained. *Martin v. State,* 753 S.W.2d 384, 388 (Tex.Crim.App.1988). The judgment of the court below is reversed, and appellant is ordered acquitted. *See Humason,* 728 S.W.2d 363.

REVERSED.

BROOKSHIRE, Justice, dissenting.

I respectfully dissent. The majority concedes, as it must, that in passing upon the sufficiency of the evidence an intermediate appellate court reviewing and analyzing all the evidence in the light most favorable to the jury's verdict must determine whether any rational trier of fact could have found the essential elements of the criminal offense beyond a reasonable doubt. *Jackson v. State,* 672 S.W.2d 801 (Tex.Crim.App. 1984). In reviewing a conviction, the same standard is used in a case involving circumstantial evidence as in a case involving direct evidence. *Houston v. State,* 663 S.W.2d 455 (Tex.Crim.App.1984). The Court declares that the State failed to establish an affirmative link between the Appellant "with the cocaine rocks found beneath his seat in the police car."

The majority does not quarrel with the fact that the cocaine rocks were found underneath Williams' seat in the police car. The Court also takes the position that the State has failed to show that the defendant exercised any care, control, custody or management over the substance involved which was crack cocaine and secondly, that the State failed to show that the defendant

knew that what he possessed was contraband.

The Statement of Facts of the guilt-innocence phase is not long. The same contains 108 pages of evidence and testimony. I think that, under the Statement of Facts, a rational trier of fact could have and did, in this case, find beyond a reasonable doubt each essential element of the criminal offense on trial. Under the facts there was no other reasonable hypothesis except the guilt of the accused. A summary of the facts, which the jury had a right to believe and to attach weight to, follows. This summary of the facts comes from the witnesses proffered by the State. But it must do so because the Appellant offered no witnesses or testimony at the guilt-innocent phase. The first witness was Beaumont Police Officer Godeaux. He had served on the Beaumont Police force for about five years. He was assigned to a patrol on July 10, 1988. On that patrol he had riding with him Officer Jim Simonson, who had been an officer for about 3 months. Godeaux was the field training officer for Simonson. Godeaux affirmatively and unequivocally swore that he saw Simonson take out the back seat of their nearly new patrol car and shake the same and inspect the area behind and under the back seat. This was done before their patrol started. Nothing was found. It was clear. It was clean. There were no gum wrappers, cigarette packages or other litter or material. Also this practice was an invariable routine procedure. Godeaux, under oath, stated that he had personal recollection of that maneuver with the back seat of the patrol car on the very day in question, being July 10, 1988. Officer Simonson testified to the same facts. Simonson stated he had personal recall of the inspection before their patrol began. Neither of the police officers' testimony was shaken or discredited by cross-examination on this phase of the evidence.

Godeaux also stated that he did not recall having any other calls before stopping the Appellant. He did concede that if there had been some other calls that their patrol car would have been left unattended but; nevertheless, he did not remember any

such unattended incidences. Godeaux also swore that when they stopped to eat the patrol car doors were locked. I think that the record shows that there was simply no other access to the underside or the back side of the back seat of the patrol car on the passenger side except that access which the Appellant had.

Godeaux then stated that their patrol took them to the Irving Street area. The record is not contradicted on this point. The Irving Street area is a known, high crime area. This same area is also known as an area where dope users and dope pushers frequent. Godeaux and Simonson observed a vehicle with an expired inspection sticker in the 1800 block of Irving Street in Beaumont, Jefferson County. The vehicle was an El Camino. The record also demonstrates that the driver of the El Camino did not have his seat belt on. Godeaux observed this violation. A traffic stop was made in the 1800 block of Tilson Street, a street that runs parallel to Irving Street. When the El Camino was stopped, Officer Godeaux thought that he recognized the driver; indeed, he did recognize the driver. He asked the driver if his name was Johnny Ray Williams. The Appellant, who was actually Johnny Ray Williams, said: "No." Johnny Ray Williams then claimed that his name was Johnny Henry Kirkendall. The Appellant could not produce any driver's license; he could not produce any proof of insurance. The inspection sticker on the El Camino had definitely expired. Then Godeaux contacted his sergeant on the radio and, following departmental policy, arrested the Appellant because he had no driver's license, no public liability insurance and no proof of any I.D. or identification.

Upon arrest, the Appellant was handcuffed and placed in the rear seat of the police car behind the front passenger seat. His hands were cuffed or manacled behind him. Then Godeaux conducted an inventory of the El Camino. This took approximately five minutes. There was a passenger with Johnny Ray Williams. He was detained for a short period of time and watched until the Appellant's car was inventoried. Thereafter, later, he was free to leave. The passenger departed the scene by walking. At Williams' request, the El Camino was locked and left at the place of Williams' arrest. Important it is to stress the fact that the back seat was taken out and shaken and the area under and behind the back seat, according to the officers' testimony was carefully examined before the patrol was started. Nothing was found. Certainly no four rocks of crack cocaine were found. Simonson said that the handcuffs were loosened at the request of Williams.

Each officer stressed that it was important to make a thorough search of the back seat of the patrol car for their own safety because it was possible that weapons or dangerous instruments could have been placed in the area underneath the rear seat during a previous shift. They checked the front seat of the patrol car also. And each officer stated that they performed this inspection in sight of each other on July 10, 1988, the date in question. Simonson swore that he removed the back seat and shook it to make sure that there was no contraband therein. The front seat was also carefully checked for the reason that there are occasions where the arrestees or the prisoners are placed in the front seat of the patrol car when the law officer is riding alone. One of the officers testified that a lot of the prisoners or arrestees dump a lot of things or attempt to dump a lot of things in, under, or behind the back seat.

The record also clearly reflects that it was the duty of Simonson to attempt to watch the passenger who was standing by the El Camino as well as Williams, who had been placed in the back seat of the patrol car. He could not watch both men simultaneously and there were periods of time when he could not have been watching Williams.

When the patrol car arrived at the county jail, Godeaux exited the vehicle and walked into the booking area. When Godeaux had been gone a short time, he returned to the patrol car. It was at that point that Officer Simonson showed the four white rocks which, from his prior experience as a police officer, Godeaux recog-

nized as rock crack cocaine. They were not in an envelope or plastic container. They were loose. Simonson had conducted another search of the patrol car and found the four rocks of crack cocaine under the seat where Williams had been seated. There had been no other prisoners or no other arrestees in the back seat other than Johnny Ray Williams. These facts were to be weighed by the jury and the jury had the sovereign duty and power to attach the proper weight to be given to these facts and the credibility to be afforded to the witnesses. Neither one of the officers could remember having had any cause or any occasion where the patrol car was left unattended. That was a part of the evidence that the jury had a right to weigh. But even if they had cause and had left the patrol car unattended, there is no evidence that a third person did or could have approached the patrol car and somehow removed the back seat or forced four rocks of crack cocaine underneath the back seat on the passenger's side. Under this record that hypothesis, if it is a hypothesis, is not a reasonable one. It is true that the area of Irving Street and the immediate surrounding area were known as a high crime area and an area frequented by drug users and drug sellers, but why would these persons want to go to an unattended police patrol car (if it was unattended) and remove the back seat and place rock cocaine underneath the back seat, or, in some manner, force the rock cocaine to the rear of the back seat on the passenger side? That hypothesis, I submit, is simply not reasonable.

Furthermore, it is uncontested in the record that, after the handcuffs were loosened, the Appellant became very fidgety for a period of time. There was testimony in the record, too, that while the inventory was being made, on Tilson Street, and while the officer in training, Simonson, was watching both Appellant Williams and the passenger, who had not yet been released, that there were times when Simonson could not have seen any unusual movements made by Appellant in the back seat of the patrol car.

I think the location and placement of the rock crack cocaine, being underneath the back seat where Williams had been sitting and where he had been unobserved for periods of time, are of crucial significance in this appellate review. Admittedly, it was Officer Simonson that testified to these facts. But also, admittedly, it was the jury's sovereign power and duty to believe Simonson if they decided to do so. Even if a third person had attempted to place the crack in the patrol car, that person could have not done so unless the back seat was removed or they had somehow forced the crack cocaine under the back seat. Certainly, the crack could not have bounced to where it was found; nor could it have richocheted to the place where it was found. Nor was it a bank shot.

Officer Simonson was the second witness for the State. He unequivocally testified that he checked the back seat of the patrol car. He lifted the back seat right up and he looked under the entire back seat before starting on their patrol. Simonson swore that the whole area under the back seat was clear and clean. He even checked the back of the backrest area with his hands and felt in the backrest area with his hands to make sure that there was nothing hidden there. He swore that he checked not only underneath the back seat where the bench or seat itself goes, but, also, he checked up underneath the back part of the back seat. He swore that he did not find anything. He further swore that he did not find any type of trash such as a potato chip bag or a gum wrapper or cigarette packs or anything similar to those. He stated that the areas were fairly clean because the patrol car was a new patrol car. It is glaringly clear that no one sat in that area on the passenger side of the back seat except the Appellant. After the Appellant had been seated there for some time and had exited the patrol car at the booking station, Simonson found the four rocks of crack cocaine. Since it was admittedly and concededly a high crime area and an area where drug and dope users and dealers frequented, the jury could, well within their prerogative, find (as they did find) that Williams controlled the crack by disposing

of the same under and beneath his seat and he knew that it was contraband because the 4 rocks were crack cocaine.

There was testimony that Williams was fidgety in the back seat and that he was fidgeting on the area of his left leg and at his waist. Upon apellate review in the intermediate appellate court, the accused is not cloaked with the presumption of innocence. *Houston v. State,* 663 S.W.2d 455 (Tex.Crim.App.1984). A close analysis of this record, it seems to me, demonstrates that both direct and circumstantial evidence are present, both possessing probative force. This conviction, in my opinion, is not based, realistically, on circumstantial evidence. It is based, in major part, on direct evidence. Nevertheless, not every other hypothesis of any type must be excluded but only every other reasonable hypothesis must be excluded in order that the conviction may stand.

In *Carlsen v. State,* 654 S.W.2d 444 (Tex.Crim.App.1983, Opinion on Rehearing), the court stated that the reasonable hypothesis exception (to exclude every other reasonable hypothesis) is one of the considerations. It does not constitute the ultimate test. The test is simply that any rational trier of fact could have found all essential elements of the crime beyond a reasonable doubt.

I say that a rational trier of fact, acting rationally and logically, could determine and could find each and every essential element of the crime charged herein beyond a reasonable doubt. And the jury did exactly that.

In my opinion, a careful rereading, outlining and analysis of the testimony of Officer Godeaux and Officer Simonson, who were both "eyeball witnesses", leads me to the necessary, logical conclusion that the overwhelming part of the evidence and testimony in this case is direct. In my opinion, only a small portion of the evidence can be correctly classified as circumstantial. In *Carlsen v. State,* 654 S.W.2d 444 (Tex.Crim.App.1983, Opinion on Rehearing), the court wrote, in substance, that *when a conviction is based on circumstantial evidence,* then the circumstantial evidence must exclude every other reasonable hypothesis except the guilt of the accused. The court wrote crucially as follows, at page 447:

"It is not required that the circumstances should, to a moral certainty, actually exclude every hypothesis that the act may have been committed by another person, but that the hypothesis is a reasonable one consistent with the circumstances and the facts proved. *Moore,* [v. State, 640 S.W.2d 300 (Tex.Cr.App.1982)] supra; *Autry,* [v. State, 626 S.W.2d 758 (Tex.Cr.App.1982)] supra; *Swink,* [v. State, 617 S.W.2d 203 (Tex.Cr.App.1981)] supra; *Flores,* [v. State, 551 S.W.2d 364 (Tex.Cr.App.1977)] supra. *Each fact need not point directly and independently to the guilt of the accused, as the cumulative effect of all the incriminating facts may be sufficient* to support the evidence...." (Emphasis theirs and emphasis added)

The court further wrote, at page 448–449;

"Instead, the *relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.* See *Johnson v. Louisiana,* 406 U.S. [356,] at 362 [, 92 S.Ct. 1620, at 1624, 32 L.Ed.2d 152]. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, *to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.* Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion *that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law....*

....

"It follows that circumstantial evidence should not be tested by an *ulti-*

*mate 'standard for review' different from direct evidence; the standard in both kinds of cases is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'* Accord *Griffin v. State,* 614 S.W.2d 155 (Tex.Cr.App.1981)" (Emphasis theirs and emphasis ours)

The contrarians—not meaning the court's majority—might contend that my summary and narrative of the evidence comes from the evidence placed before the jury by the State. But it should be remembered that, when the State rested in the guilt/innocent phase, the accused also immediately rested. The defense offered no witness or evidence at this stage.

In the punishment stage, three additional enhancement paragraphs were read. These paragraphs set out a felony charge of breaking and entering a motor vehicle resulting in a final conviction on August 9, 1976; a final conviction for the felony offense of delivery of a controlled substance on August 9, 1976, and a final conviction of felony theft on November 26, 1984. When the balance of the indictment was read to and before the jury the court asked:

"THE COURT: What's the defendant's plea, true or untrue, Mr. O'Fiel?

"THE DEFENDANT: True."

The State then offered two exhibits, being certified Pen Packets. Then, the State rested. Again, the accused immediately rested. Thus, the jury heard only from the State's witnesses and viewed only the State's exhibits. That was all there was.

In my opinion, any hypothesis under this record, except the guilt of the accused, would be unreasonable. I would vote to affirm the conviction, judgment and sentence below. Since the court declines to do so, I respectfully dissent.

The concepts of circumstantial evidence and direct evidence denote different modes or methods in which the facts testified to operate to produce a verdict of conviction. Circumstantial evidence has been authoritatively characterized as direct evidence but it is evidence of a minor fact or facts of such a nature that the rational mind is lead intuitively, or by a conscious process of reasoning and logic, towards or to a verdict of conviction that from those minor facts the other facts to be proved may be necessarily and reasonably inferred. In other words, circumstantial evidence is direct evidence as to the facts deposed to but indirect as to the factum probandum. (Factum Probandum: In the law of evidence. The fact to be proved; a fact which is in issue.... BLACK'S LAW DICTIONARY, 4th Edition, West Publishing Company, 1957.) *Brown v. State,* 126 Tex.Crim. 449, 72 S.W.2d 269 (App.1934). In a given case, the evidence may be partly circumstantial and partly direct. *Brown, id.* And circumstantial evidence can be strongly and compellingly forceful in proving the essential elements of a criminal offense beyond a reasonable doubt. Hence, I cannot agree, under this record, that the evidence must exclude every other reasonable hypothesis except the guilt of the accused. But, nevertheless, I think that the evidence does exclude every other reasonable hypothesis. I think that the test or standard set out in *Houston v. State, supra,* is the only correct one.

Since the court holds that the evidence is insufficient, and since the court orders the Appellant acquitted, I must respectfully dissent.