Bernard N. BAILEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 37279.

Court of Criminal Appeals of Texas.

Nov. 25, 1964.

Rehearing Denied Jan. 13, 1965.

Ray Stevens, Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally, Cletus A. Davis and Donald M.

Smith, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Presiding Judge.

The offense is forgery; the punishment, enhanced by two prior convictions for offenses less than capital, life.

The prior convictions were stipulated and appellant testified to the convictions alleged and others.

The indictment alleged forgery of a purchase agreement dated July 31, 1963 for an Atlas tire, size 800-14, for $31.37 plus sales tax of $3.12, the total of $34.49 to be paid in six equal monthly installments to Humble Oil and Refining Company. The purchase agreement bears the imprint of a credit card issued by Humble Oil and Refining Company to George D. Ridings. The purported signature of George D. Ridings, holder of an Humble credit card, appears on such purchase agreement.

The evidence shows that the appellant purchased the tire at the Bellar Humble Station in Pasadena on July 31 and signed the name of George D. Ridings on the purchase agreement.

George D. Ridings testified that he did not authorize the appellant to sign his name or to use his credit card. He testified that he knew the appellant casually through his sister Lou Collier, and was asked and answered: "Q. Had you given your sister permission to use the card? A. I gave nobody my permission to use my card except my wife, it was used without my consent."

Appellant's voluntary statement was admitted in evidence without objection and reads in part:

"On July 31, 1963, me and a friend borrowed his Mother's car, a Black and White 1956 Buick. We talked about coming to Pasadena, Texas to buy some tires on a Humble Credit Card, I had gotten from a sixteen year old girl. This card I had, was issued to a George D. Ridings from Humble. I did not have George D. Ridings' consent or permission to have his card. I had gotten this card from a girl who wanted to sell it for $25.00. I did not have the money for the card so I promised to get her mother two tires for her Falcon.

"This friend and I drove over to Pasadena in the Buick and went to Bellar's Humble Station at Tatar and Southmore, where we bought two tires. The tires were 800 x 14. I signed the ticket at the station for the two tires. I was shown one of the tickets, dated 7-31-63 in the amount of $34.49. This is one of the tickets I signed. I signed the name of George D. Ridings. I did not have his permission nor consent to sign his name to this ticket or any other ticket. After we got the two tires from this station, we drove to Southmore & Richey to Henry's Humble Station, where we bought two more tires. This tires were 760 x 15. I was shown one ticket dated 7-31-63 in the amount of $37.20. This is one of the tickets I signed at the time we bought the two tires from Henry's Humble Station. I signed the name of George D. Ridings to the ticket. I did not have George D. Ridings' consent or permission to sign his name to this ticket. After we got these two tires we went to South Houston, Texas.

"I knew a man in South Houston who would buy the tires from us. I had talked to a friend who told me about this man in South Houston and had given me his phone number to call when I had tires to sell. I called this man and made a deal to meet him at Rantans Drive Inn on College St. in South Houston. We met with this man and he bought the tires for $10.00 apiece. After this we drove on back to Denver Harbor."

 **243**

Appellant testified and offered testimony to the effect that Mr. Ridings' sister told him that she had borrowed the credit card from her brother; that he purchased the tires and other merchandise for Ridings' sister who wanted to sell them to finance a trip to Waco to get her children. She was going to pay it back on a monthly basis—"She told me that was the deal she had made with her brother."

The evidence shows, and appellant admitted, that he used the credit card and signed Ridings' name to purchase agreements for the purchase of other tires and merchandise, each from a different Humble station on July 30th and 31st, and August 1st and 3rd.

We are unable to agree with appellant's contention that this case should be treated as one of reasonable doubt as to the sufficiency of the evidence because the state failed to call Mrs. Collier as a witness. Whitehead v. State, 49 Tex.Cr.R. 123, 90 S.W. 876.

As has been pointed out, Ridings' testimony was that he did not give his sister or anyone else (except his wife) permission to use his credit card and that it was used without his consent.

Mrs. Collier was available to testify, she having been summoned as a witness for the defense. Appellant did not see fit to call her to support his testimony that he acted for her, without intent to defraud.

The rule relied upon by appellant has no application. This is not a circumstantial evidence case and the evidence is not "obviously weak." The state's evidence is direct and is sufficient to sustain the conviction.

This Court will not treat the failure of the state to call certain witnesses as raising a question of reasonable doubt as to the sufficiency of the evidence to support the conviction where the evidence is not obviously weak and the state does not rely on circumstantial evidence. 24 Tex.Jur. 2d 428, Sec. 745; Barrera v. State, Tex. Cr.App., 371 S.W.2d 881; Lockhart v. State, 171 Tex.Cr.R. 648, 352 S.W.2d 749; Barker v. State, 168 Tex.Cr.R. 513, 329 S.W.2d 889; Musser v. State, 167 Tex.Cr. R. 529, 321 S.W.2d 882; Fletcher v. State, 164 Tex.Cr.R. 321, 298 S.W.2d 581; Lowe v. State, 163 Tex.Cr.R. 578, 294 S.W.2d 394.

The judgment is affirmed.