**Charles Lee ROBERTS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 45295.**

Court of Criminal Appeals of Texas.

Nov. 15, 1972.

Rehearing Denied Jan. 17, 1973.

Buddy Stevens, George Parnham, Houston, for appellant.

Robert O. Smith, Dist. Atty., Phoebe Lester, Asst. Dist. Atty., Austin, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the possession of heroin. The jury assessed the punishment at forty-five years.

Appellant's sole ground of error is that the trial court erred in failing to instruct the jury on the law of circumstantial evidence.

The record shows that on April 13, 1971, the appellant, his wife, Kathie Roberts, and his mother, Marie Roberts, were visiting his father and brother in the Travis County jail, and while there, the appellant was arrested for possession of heroin. The events leading to the arrest of appellant are important to the determination of this case. Deputy Albert Gonzales of the Travis County Sheriff's Department had received a tip from an undisclosed informant that Charles Lee Roberts would attempt to pass heroin to his father and brother. Acting on this information Deputy Gonzales, prior to visiting hours, moved the jail elevator to the third floor and searched both the elevator and the trusty operating it. Nothing was found. He then returned to the first floor and then allowed no one to enter the elevator until appellant, his family, and two other women entered the elevator to go to the jail located on the fifth floor. There was one other passenger who entered the elevator with them, Sgt. James Belvin of the Austin Police Department, who posed as a visitor to the jail. After the elevator had made its trip to the fifth floor jail and returned to the first floor, Deputy Gonzales approached the trusty and found him to be in possession of a cigarette package which contained the narcotics in question. When appellant and his family returned to the first floor, he was arrested.

Appellant contends that the only direct evidence available to the State to bring before the trial court was the testimony of the elevator operator, Sammy Sorriano. The record reflects that the State neither issued a subpoena for him nor explained why he was not used as a witness. It is appellant's contention that without such testimony Sorriano's actions while he was left alone in the elevator from the time it departed the fifth floor until it arrived at the first floor cannot be explained. Therefore, he alleges that the State's case rests solely on circumstantial evidence.

This Court recognizes that the failure of the State to call or explain why it does not call an available witness that would directly connect appellant to the offense creates a presumption that the witness would be favorable to the appellant. The rule is applicable only to cases in which the State is relying solely on circumstantial evidence. However, there is no duty to call all available witnesses when there is other direct evidence available in the case. Bailey v. State, 385 S.W.2d 241; Headley v. State, 386 S.W.2d 290.

An examination of the record shows that Deputy Gonzales testified that he in fact did search Sorriano and the elevator prior to visiting hours and that such search was fruitless. He further testified that he had enlisted the aid of Sgt. Belvin to pose as a visitor and ride up the elevator with appellant, his family, and the two other visitors. Next, he testified that upon the elevator's return to the first floor he approached Sorriano and that Sorriano pulled a small package of waxed paper and a Lucky Strike package from the right back pocket of his coveralls.

It is at this point that appellant urges that the possession could have just as well been acquired by Sorriano while he was alone in the elevator on the trip down from the fifth floor to the first floor. He suggests that such package may have been on Sorriano's person because when he was searched initially his body openings were not searched. This theory is without merit; there was only one cigarette package found. Deputy Gonzales testified that the doors on the second, third and fourth floors were locked, that there was only one set of keys to said doors, and that he checked to see that the keys were in their proper place in the vault.

However, the appearance of the cigarette package in the possession of Sorriano is not unexplained. When Sgt. Belvin was called to testify, he said, "Just as I got on the elevator, he (appellant) reached in the back pocket, right hip pocket of the elevator operator, and placed a crumpled up package of cigarettes in it—empty or almost empty." He then stated that he heard appellant say to the elevator operator, "Be sure you give it to him, . . ." He also testified that no one else in the elevator touched the elevator operator who was in his sight the entire time from the first floor to the fifth and his subsequent departure from the fifth floor. Sgt. Belvin further testified that upon his return to the first floor where appellant was being placed under arrest, he heard appellant's mother say, "I knew that you would get caught."

An analysis of the evidence in this case shows that the elevator operator was in the sight of either Deputy Gonzales or Sgt. Belvin at all times after he was initially searched by Deputy Gonzales except for the minute or two when he was alone in the elevator during the return trip from the fifth floor to the first floor. The evidence shows that it was impossible for Sorriano to have opened the door of the elevator on either the second, third or fourth floors because the doors or exits to the elevator shafts were locked and the keys were secured in their proper storage place in the sheriff's vault. Appellant was observed placing a cigarette package in Sorriano's right back pocket on the trip up to the fifth floor and on his return to the first floor he produced a cigarette package from that same right back pocket when approached by Deputy Gonzales.

This case is very similar to the fact situation in Oltiveros v. State, 474 S.W.2d 221. In that case the police had arranged to have their go-between, a man named Eaton, make a purchase from the defendant. Prior to Eaton's getting into his automobile, he and the automobile were searched and he was given fifty dollars with which he was to make the purchase. He was kept under surveillance at all times by an officer hidden in the trunk of his automobile and two other officers observing through binoculars. After Eaton had come out of the appellant's house he was observed carrying a "little silver bundle." A subsequent search of Eaton and the automobile at the police station produced no other narcotics and showed the fifty dollars to be missing from his person. Eaton was alone in the house with the appellant; the officers did not see the bundle passed to Eaton. Also, there was no testimony that Eaton's body openings were searched either before going to the appellant's house or after returning from appellant's house. Nor was Eaton called to testify, but then that was because he was shown to be dead at the time of the trial. This Court held that the facts proved in the case were of such close juxtaposition to the main fact to be proved as to be equivalent to direct testimony, and a charge on circumstantial evidence was not required.

In the instant case the facts are stronger. Appellant was observed placing a cigarette package in the right back pocket of his intended go-between. Later, analysis of the contents of the cigarette package retrieved from the elevator operator showed it to contain heroin. No other cigarette package was found on the person of Sorriano nor in the elevator.

The facts in this case are in such close relation to the main fact to be proved as to constitute direct evidence and render a charge on circumstantial evidence unnecessary. Galvan v. State, 461 S.W.2d 396. See Riggins v. State, 468 S.W.2d 841, and the cases there cited.

We hold that the trial court did not commit error in refusing to submit a charge to the jury on circumstantial evidence.

No error being shown, the judgment is affirmed.

ROBERTS, Judge (dissenting).

Once again this Court has seen fit to rest its decision upon the tenuous "close juxtaposition" or "close relation" doctrine.

The record reflects that Sgt. Belvin only saw appellant place a crumpled up package of cigarettes in the back pocket of the elevator operator, and nothing more. No one actually saw appellant pass the narcotics in question. The elevator operator was alone for a minute or two on the return trip from the fifth floor to the first floor.

Admittedly, the evidence presented is sufficient to support a conviction based on the circumstantial evidence. But the error lies in the court not instructing the jury on the law of circumstantial evidence. I must again question, as I did in Oltiveros v. State, 474 S.W.2d 221 (Tex.Cr.App.1971) and Riggins v. State, 468 S.W.2d 841 (Tex.Cr.App.1971), the reasoning behind such a doctrine as this. What possible harm could occur in charging the jury on circumstantial evidence? It would be far better to allow the charge in all such cases than for this Court to affirm the conviction on such a flimsy principle.

For the reasons stated herein and in the previously cited cases, I respectfully dissent.

ONION, P. J., joins in this dissent.