Ernesto M. SOLIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 45798.

Court of Criminal Appeals of Texas.

Feb. 28, 1973.

Rehearing Denied April 18, 1973.

Pat Priest and George G. Cooper, San Antonio, for appellant.

Ted Butler, Dist. Atty., Bill White, Gordon v. Armstrong, Bill Harris and Antonio G. Cantu, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal arises out of a murder conviction where the punishment was assessed by the jury at life imprisonment.

The record reflects that on June 20, 1970, at 3002 Pitluk Street in San Antonio, Christina Solis was shot three times by her husband, the appellant, while her hands were being held behind her back by his stepbrother, Joe De Los Santos, Jr. Following the shooting the appellant and De Los Santos ran outside and got in a car and drove to Mexico. The appellant was arrested some six months later in the State of California.

Testifying in his own behalf appellant admitted shooting his wife, but claimed he was alone with his wife at the time and she had just advised him she had just had sexual intercourse with another man.

Initially, appellant claims he did not have "fair notice of the venire for his case."

On February 12, 1971, the court overruled a motion for a special venire in this

case where the State sought the death penalty. See Article 34.01, Vernon's Ann.C. C.P.

■ On March 15, 1971, appellant's counsel acknowledged to the trial court that a list of the jury panel for the week of the trial containing some 740 names had been timely provided as required by Article 34.04, V.A.C.C.P., while candidly admitting he had made no effort to investigate the background of the jury panel for the week. Appellant's counsel orally asked for a 48 hour postponement in order that he might investigate the background of the members of the jury panel for the case which had been taken from the jury panel for the week. The motion for postponement was denied and the four-day interrogation of the jury panel, one at a time, separate and apart from the others, was commenced.

We find no merit, under the circumstances, in appellant's contention he did not have "fair notice."

■ Next, appellant contends the jury selection method was improper citing Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. Witherspoon, of course, has no application where the death penalty is not imposed. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; Hinkle v. State, 442 S.W.2d 728 (Tex.Cr.App.1969); Parks v. State, 437 S.W.2d 554 (Tex.Cr.App.1969).

If it be appellant's contention that the jury selection methods used resulted in a prosecution prone jury to decide the issue of guilt then attention is called to Parks v. State, supra, and Bradley v. State, 450 S. W.2d 847 (Tex.Cr.App.1970) which, relying upon Bumper and Witherspoon, were decided adversely to appellant's contention.

The appellant here has not offered any more data than available in those cases to demonstrate that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt. See also Morales v. State, 458 S.W.2d 56 (Tex.Cr.

App.1970); Woodard v. State, 463 S.W.2d 197 (Tex.Cr.App.1971).

■ Appellant's next ground of error complains that his conviction "resulted, at least in part, from inadmissible sworn and unsworn testimony and from the prosecution's lack of good faith." The appellant complains about several instances which occurred during the trial. The brief weaves these instances together in such a manner it is clear the ground of error is multifarious and not in compliance with Article 40.09, Sec. 9, V.A.C.C.P. Much of the brief concerning the ground of error relates to a claim of conflict between testimony of State and defense witnesses. There was no dispute that appellant shot and killed his wife. The conflict in the testimony was resolved by the jury who was the trier of the facts, the judge of the credibility of the witnesses and weight to be given to the testimony. Appellant also contends the testimony of Deputy Sheriff Bob Beckmann that he went to California and took the appellant into custody over six months after the alleged offense was inadmissible.

■ Evidence of flight is admissible. Although the flight of an accused is not grounds for a presumption of guilt it is still a circumstance from which an inference of guilt may be drawn. Ysasaga v. State, 444 S.W.2d 305 (Tex.Cr.App.1969).

■ The fact that an accused is out of state when apprehended a long period of time after the commission of the crime is admissible to show flight. Sebastian v. State, 41 Tex.Cr.R. 248, 53 S.W. 875 (1899).

■ Appellant further complains of the admission of testimony by Elodia Garcia that shortly after the shooting Rosa Bravo told her that the appellant had shot the deceased three times in the face.

The witness Garcia, a next door neighbor of the deceased, testified that within seconds after she heard shots that Rosa

Bravo and other girls came screaming to her house, that Rosa was excited and crying and related the complained of testimony.

After a hearing in the jury's absence the court ruled the same was admissible as part of the "res gestae." We agree.

Further, Rosa Bravo, the deceased's sister, was an eye witness to the shooting and saw three shots fired. Appellant in his testimony admitted the shooting and the medical examiner testified as to the location of the three bullet wounds and the cause of death. We can perceive no error in the admission of such testimony.

◾ The appellant also contends that the prosecution's lack of good faith is reflected by the attempt to interject an extraneous offense. On cross-examination, appellant admitted he fled to Mexico and California after the alleged offense but denied having been in Lubbock after the alleged offense. The prosecutor then asked:

"Q  Well, whey you got arrested out in California were you driving a car?

"A  That's right.

"Q  Where did you get the car?

"A  I refuse to answer on the grounds that I will incriminate myself, the Fifth Amendment.

"Q  I am sorry?

"A  I refuse to answer on the grounds I may incriminate myself."

At this point appellant's counsel requested the jury be removed and moved for a mistrial in their absence. The prosecutor acknowledged that he had information that the car in which appellant was arrested in California had been stolen in Lubbock, and urged the same was admissible in light of a case he had earlier shown the court. The court overruled the mistrial motion, sustained the objection to any further questioning along this line, but refused to instruct the jury to disregard for fear of overemphasizing "the particular point."

No further evidence was offered before the jury.

Appellant's complaint is directed to the prosecution's lack of good faith. We cannot agree. It appears that the prosecutor was relying upon this Court's decision in Thames v. State, 453 S.W.2d 495 (Tex.Cr. App.1970). See also Sanders v. State, 462 S.W.2d 3 (Tex.Cr.App.1971). We are not confronted with a situation where the prosecutor is deliberately attempting to elicit inadmissible evidence. Under the circumstances there is clearly no reversible error.

◾ We also find no merit in appellant's claim that the court erred, without objection, in informing the jury panel at the commencement of the voir dire examination that the State was seeking the death penalty. Even if an objection had been interposed no error would have been reflected.

◾ Next, appellant complains that the court prejudiced him by asking when the State rested its case at the guilt stage of the trial:

"All right. Are you gentlemen ready to go forward with your proof?"

As soon as the jury was excused for the day appellant moved for a mistrial based upon the court's question or remark which was overruled. No instruction to disregard was requested.

Appellant contends the remark imposed the burden upon him "to bring forward some character of evidence, and had to that extent commented on the weight of the evidence, undertaken to act as counsel for appellant, and rendered the jury nonimpartial."

We do not agree. While in hindsight the question may have been better phrased, it certainly is a common question addressed to counsel by courts. Appellant cites no authority and makes no claim that he in fact testified and called a number of other defense witnesses which he would not have

done except for the court's remark. In fact the contrary seems apparent.

The defense had subpoenaed a number of witnesses and some of these were sworn at the commencement of trial when the rule was invoked. Subsequently, the defense called ten witnesses including the appellant.

We do not view the court's question as being a comment on the weight of the evidence, or casting any burden upon appellant or rendering the jury non-impartial. Cf. Terry v. State, 489 S.W.2d 879 (Tex. Cr.App.1973).

Appellant further complains of the trial court's exclusion of relevant medical testimony.

Dr. Luis Garza was called as a defense witness. After his qualifications were established he testified he had treated the deceased. Then, upon the State's motion, the jury was removed so that the relevancy of his testimony could be established.

Dr. Garza testified the deceased had come to see him on April 8, 1971, about a female disorder, apparently having been referred to the doctor by an organization known as Planned Parenthood. He related that he treated her for a vaginal condition known as cervicitis which was common to married women and not always connected with venereal diseases. At her request he furnished her a prescription for birth control pills on the same date (approximately a week prior to appellant's release from prison).

Dr. Garza could not say whether Planned Parenthood had furnished the deceased any birth control pills prior to her consultation with him, although he supposed no contraceptives were supplied to her because of her infectious condition.

No testimony from anyone at Planned Parenthood was offered.

Appellant contended to the trial court that this testimony would show that the de-

ceased had been taking birth control measures at least a month prior to his release from prison, that her infirmities were perhaps due to illicit sexual activities including the possible contraction of a venereal disease and that had a bearing on appellant's state of mind, although the appellant had not testified at this time.

The court ruled that the relevancy of the doctor's testimony had not been shown, but that if it became relevant the appellant could re-offer the testimony provided a proper predicate was laid.

No effort was ever made to re-offer the testimony and we find no error in the court's action.

Next, appellant complains of the court's exclusion of part of Dr. Martin Giffen's testimony as to his (appellant's) state of mind at the time of the alleged offense on the basis that it was invading the province of the jury on an ultimate issue in the case.

Dr. Giffen, a specialist in psychiatry, was called by the defense. He related he interviewed the appellant in jail on one occasion and formed the opinion that the appellant was sane and knew the difference between right and wrong. He testified that they "had some discussion" concerning the alleged crime, but "not all the circumstances of the crime were mentioned" and that the appellant "had no clear memory" of what immediately preceded the shooting. Subsequently, appellant's counsel asked if the witness had an opinion as to the appellant's state of mind "at the time of the commission of the offense." The State's objection was sustained and later the jury was removed to allow the appellant to prove up what he wanted to offer. During the hearing in the jury's absence appellant interrogated the witness as to many matters but we are unable to find where he established that the witness had an opinion as to the appellant's state of mind, and if he did, what it was. At the hearing's conclusion the court made clear he would allow the witness to testify to the appellant's

**566**

"personality structure" and "psychological make-up" or anything the witness had "expertise about" but refused "to let him say what he thinks happened when this killing occurred from an interview he conducted later." Shortly thereafter, the appellant excused the witness without offering much of the testimony which would have been admissible under the court's ruling.

At the outset it is clear that the appellant did not perfect his bill of exception to show what the witness would have testified to if permitted and nothing is presented for review.

Further, in view of appellant's strong reliance upon Hopkins v. State, 480 S.W.2d 212, at page 218 (Tex.Cr.App.1972) we observe the court there said:

"The repudiation of the 'invasion of the province of the jury' rule does not mean that an expert or non-expert witness may freely state his opinion in regard to any fact in issue. Before his testimony can be admissible, the following criteria must be met: (1) He must be competent and qualified to testify. (2) The subject must be one upon which the aid of an expert opinion will be of assistance to the jury. (3) His testimony may not state a legal conclusion."

Under the circumstances stated we perceive no error.

Appellant also complains he "was denied full discovery under Brady-Giles-Alcorta[1] in several respects."

It is apparently appellant's contention that there existed a police offense report concerning a burglary that was in the State's possession of which the State had knowledge that was not produced upon a motion for discovery or was intentionally suppressed to prevent its possible use by the defense to corroborate appellant's testimony.

Appellant testified that there had been a burglary at his father-in-law's service station on June 18, 1970 and that this offense led him to be in possession of a pistol at the time his wife was shot.

No one with the prosecutor's office had ever seen such report and it had apparently not been located because of misfiling or lack of identifying information. Appellant admits there was no willful suppression.

Appellant's counsel explained he did not subpoena the person having possession of the San Antonio Police Department's records because he did not believe there was such a report, but he does not explain why he did not call three witnesses whom he admitted could have corroborated the appellant as to the fact of a burglary.

Under the circumstances, no error is presented.

Appellant's other grounds of error are multifarious and are not in compliance with Article 40.09, Sec. 9, V.A.C.C.P. Nothing is presented for review. Nevertheless, the same have been examined and are found to be without merit.

The judgment is affirmed.

1. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed. 2d 737; Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9.