Warren W. ARMSTRONG, Appellant,

v.

The STATE of Texas, Appellee.

No. 51509.

Court of Criminal Appeals of Texas.

July 7, 1976.

Leave to File State's Motion for Rehearing Denied Oct. 20, 1976.

Chagra & Chagra, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and William J. Ellis, Asst. Dist. Atty., El Paso, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

ODOM, Judge.

This is an appeal from a conviction for possession of marihuana. Punishment was assessed at six years.

Initially, appellant challenges the sufficiency of the evidence. Second, he asserts the trial court erred in refusing his requested charge on circumstantial evidence.

Evidence heard on the motion to suppress reveals that at approximately 11:30 a. m. on October 7, 1970, Officer Gomez of the El Paso Police Department received information from a confidential informant that a shipment of marihuana loaded in four suitcases would shortly be taken out of El Paso by airplane. The airplane and its location were described.

Evidence received before the jury reveals that Officer Aguirre of the El Paso Police Department received a radio call on the morning of October 7, 1970, directing him

to the Southwest Air Rangers area of the El Paso Airport. He arrived and commenced surveillance of the airplane approximately at noon. No one was present for the first forty minutes of observation. Appellant then arrived and went to the airplane. He began preparing the plane for service, walked to the Southwest Air Rangers building briefly, and then returned to the plane.

Ten minutes later a taxi arrived with Richard Watson and four suitcases. Watson and appellant each carried two suitcases to the plane and placed them in the cargo section. Both boarded and appellant started the engines. Officer Aguirre and other officers on the scene surrounded the plane with their vehicles. Aguirre jumped on the wing on the pilot's side and ordered appellant to stop the engines, which he did. The officers then boarded the plane and removed the four suitcases, which were found to contain marihuana.

The interior of the plane had two seats forward, one for the pilot, and the area behind these seats had been adapted for carrying cargo. Four "roaches" (marihuana cigarette butts) were found in closed ashtrays located in the cargo area, and an officer testified that he knew the smell of marihuana and could smell the marihuana that was in the suitcases when he boarded the plane.

Appellant testified that he was a flying subcontractor for a company that handled explosives, and that he was staying in El Paso briefly for refueling and instrument repairs. He was en route to California without a cargo to have other repairs performed and to pick up a cargo to carry back to the east coast. He testified he met Watson in El Paso and agreed to provide him passage on his plane to California at rates in the usual range for private charters. He also testified that his plane was left unlocked in the location where it was parked,

so the repairman could get in when he was not there.

The State had filed two motions for continuance, alleging in each that Watson was not then available and:

"The testimony of this witness is believed by the Applicant to be material for the State, as shown by the fact that it is expected said witness will establish the following facts: That the defendant WARREN ARMSTRONG knew that the suitcases involved in the above cause contained a substance believed to be marijuana, and therefore will link the defendant with the marijuana establishing his knowledge and control thereof."

The record also reflects that Watson was present and available to testify for the State but that he was not called to testify. The State presented no evidence inconsistent with appellant's testimony.

In sum, the State's evidence against appellant consisted of this: (1) appellant was seen carrying two of Watson's suitcases from the taxi to the plane; (2) the trained officer could smell the marihuana in the suitcases in the plane; (3) four "roaches" were found in closed ashtrays in the cargo area of the plane.

The strength of the first item is diminished by uncontradicted evidence that the suitcases did not appear unusual or reveal their contents. The strength of the second is diminished by several factors. The officer testified that he could recognize the smell of marihuana because "I have been working narcotics for fifteen years and I can pretty well detect the smell of marihuana," whereas appellant was not shown to know the smell of marihuana and may not be presumed to have such expert knowledge.[1] Finally, the third item is diminished in strength by the unrefuted testimony that others had access to the plane during appellant's absence and the State's evidence that there was no smell of burning marihuana

---

1. Moreover, the officer agreed that it would have been more difficult to detect the smell allegedly emanating from the suitcases when they were in the "open air", which they were when appellant carried them. The taxi driver

who drove Watson and the suitcases to the airport testified that he had helped Watson place the suitcases in the taxi, and that he never detected any unusual smell.

and that the ashtrays were closed. All were weakened by the State's failure to call Watson.[2] Cf. *Ysasaga v. State,* Tex.Cr.App., 444 S.W.2d 305.

In *Powell v. State,* Tex.Cr.App., 502 S.W.2d 705, it was held:

"When an accused is charged with the unlawful possession of a narcotic or dangerous drug, two elements must be proven: (1) that he exercised care, control, and management over the contraband; and (2) that he knew the object he possessed was contraband. [citations omitted] The evidence must affirmatively link the accused to the narcotics in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the narcotic's existence and of its whereabouts."

With respect to the suitcases, the evidence is insufficient to show that appellant knew they contained marihuana. The mere fact that he assisted his paying passenger in carrying the suitcases to the airplane is not sufficient to support a finding of knowledge any more than it would have been sufficient to support such a finding with respect to the taxi driver who assisted in placing the suitcases in the taxi. The State was bound to show independent circumstances linking the accused to the marihuana, and it showed none. By contrast, in *Powell v. State,* supra, the following was shown:

"  .   .   . (1) three people were seen at the Powell ranch where the airplane and the pickup met; (2) the three people appeared to be unloading bundles from the plane into the back of the pickup; (3) one person took off in the airplane and two people left in the pickup and were later found in it when it was stopped on the highway; (4) appellant was in the pickup after it was stopped; (5) a small quantity of marihuana was found on appellant's person; (6) there was testimony that appellant appeared to be under the

influence of narcotics at the time of arrest.   .   .   . "

With respect to the roaches found inside the airplane, we note that the ashtrays containing the roaches were located in the common cargo area of the plane, and that there was undisputed testimony that others, including one or more repairmen, had had access to the airplane for several days immediately preceding the day of appellant's arrest, and at times when appellant was not present. Hence, appellant had not been in exclusive possession of the airplane.

In *Higgins v. State,* Tex.Cr.App., 515 S.W.2d 268, 270, we said:

"Where an accused is not in exclusive possession of the premises, it cannot be concluded that he had knowledge of the narcotic and control over it unless there are additional independent facts and circumstances which link the accused to the narcotic."

Accord, *Hernandez v. State,* Tex.Cr.App., 517 S.W.2d 782.

■ The State showed no additional circumstances linking the accused to the contraband in the closed ashtrays. The evidence was insufficient with respect to either knowledge or control of the roaches. We are unable to find any case holding the evidence sufficient upon so sparse a record as this. For the sort of additional linking circumstances that may be sufficient to support a conviction, see *Brooks v. State,* Tex.Cr.App., 529 S.W.2d 535; *Cranfil v. State,* Tex.Cr.App., 525 S.W.2d 518; *Williams v. State,* Tex.Cr.App., 524 S.W.2d 705; and *Curtis v. State,* Tex.Cr.App., 519 S.W.2d 883.

■ For similar reasons, the trial court also erred in refusing the requested circumstantial evidence charge. In *Ramos v. State,* 478 S.W.2d 102, 105, this Court stated:

"The distinction between circumstantial evidence and direct evidence is that

2. Officer Gomez also testified outside the hearing of the jury during the hearing on the motion to suppress that the confidential informant told him that the Mexico suppliers told the informant that they, the suppliers, had talked to the pilot. This was hearsay upon hearsay and without probative value. No witnesses present at the alleged conversation were called to testify nor was an explanation given for their absence.

the latter applies directly to the ultimate fact to be proven, while circumstantial evidence is the direct proof of a minor fact which, by logical inference, demonstrates the fact to be proven."

In the instant case, as in *Ramos v. State,* supra, no witness saw appellant exercise control over the contraband in such a manner that knowledge of the marihuana was shown. The contraband in the ashtrays was not in a place where appellant had sole access to it. Cf. *Harris v. State,* Tex.Cr. App., 486 S.W.2d 88. Therefore, there was no direct evidence that appellant *knowingly* possessed any of the marihuana. Instead, there were only the minor facts that appellant carried two suitcases containing marihuana and that marihuana roaches were found in closed ashtrays inside his airplane. Therefore, the trial court erred in refusing the requested charge on circumstantial evidence. *Draper v. State,* Tex.Cr.App., 513 S.W.2d 563; *Selman v. State,* Tex.Cr.App., 505 S.W.2d 255; *Crawford v. State,* Tex.Cr. App., 502 S.W.2d 768; *Ramos v. State,* supra.

The judgment is reversed and the cause remanded.

DOUGLAS, Judge (dissenting).

The majority reverses this conviction on the grounds that the evidence is insufficient to support the conviction.

Officer Juan F. Aguirre testified that four suitcases were carried by Watson and appellant from the taxicab to the plane. When the cab driver offered to help carry the bags appellant said that Watson did not need any help. Officer Al Castro testified that the seats were removed from the passenger area of the plane. In the two ashtrays behind the pilot seat there were three marihuana cigarette butts or "roaches". In the right ashtray behind the co-pilot seat there was another "roach". Officer Samaniego testified that in three of the suitcases there were sixteen bricks of marihuana and fourteen in the fourth suitcase for a total of sixty-two bricks. The total weight was 127 pounds. The officers testified that they could smell the marihuana in the plane.

Appellant testified that he lived in Maryland and was a flying subcontractor for a company that handled only explosives; that he was a mechanic and a rated pilot, and that he owned the Aztec plane where the marihuana was found. Prior to the date in question he had never been in El Paso. He landed in El Paso some two days before his arrest to refuel. He had no intent of landing there originally. As he landed he was told by the operator that a part of his radar reception equipment was not operating properly and because there would be heavy traffic where he was going he wanted it repaired. He related that he ordered fuel and talked to a man about repairing his equipment. He asked about a Holiday Inn in El Paso. He went to a Holiday Inn and checked the prices and thought he would not stay there but decided he would eat at the Holiday Inn. While he was waiting for a hostess, he and Richard Watson, whom he had never seen before, engaged in conversation and decided to eat together. When appellant told Watson that he was a pilot, Watson told him that he wanted to go to San Francisco and inquired as to the cost of flying in a privately owned aircraft like his. Watson made an agreement to pay appellant approximately four times the commercial rate because Watson stated that he could see the scenery better from a private plane. He agreed to call Watson the next day. Appellant then went to some motel; he did not remember which one but it had a less expensive rate than the Holiday Inn. Appellant related that while he was getting the plane ready on the date in question a taxi pulled up with Watson. Watson had four suitcases and appellant helped carry them to the aircraft. He related that he only carried cargo and that he had never sat anywhere in that area of the plane and had not ridden in the plane except as a pilot or in the front part of the plane; that he had never carried passengers in the back area. He related that Watson never told him that there was marihuana in the suitcases; that he did not smell anything unusual in the suitcases and did not have the faintest idea how the roaches got in the

ashtrays. On cross-examination he testified that he was flying from Maryland to El Monte, California; that he came down that far south for better weather, and that he usually went by Pueblo, Colorado or Albuquerque, New Mexico.

The evidence shows that appellant owned the plane; that he did not normally carry passengers; that there were marihuana cigarette butts in the ashtrays of the plane; that there was a strong odor of marihuana coming from the suitcases; and that the suitcases contained a total of 127 pounds of marihuana. Appellant helped carry them and informed the cab driver that they did not need any help. He just happened to meet Watson at a motel dining room and have dinner and Watson wanted to fly in a private plane and look at the scenery and was willing to pay several times the price of a commercial flight.

The evidence should be construed in the light most favorable to the State. Here the appellant owned the plane with the cigarette butts in it; he was on the plane; he was in possession of the plane and in possession of the marihuana. And with all the facts and circumstances in this case the evidence in the opinion of this writer is sufficient to support the conviction. The jury was not bound to believe that appellant knew nothing about the marihuana and cigarette butts in the ashtrays and was not bound to believe that he did not smell marihuana. The jury was not bound to believe any of his testimony. They heard him testify to his story about his flight and why he was there which was off the direct route from Maryland to the Los Angeles area of California. The evidence is sufficient to support the conviction.

A fallacy in the majority opinion is that the State must disprove testimony by a defendant. In most cases a crime is usually committed with as few witnesses present as possible. The majority states that the evidence of presence of the cigarette butts in the plane was "diminished in strength by the unrefuted testimony that others had access to the plane during appellant's absence." Is the majority discussing his ab-sence from the plane in Maryland or any other place he might have flown? This reasoning is like one disclaiming marihuana in his automobile because others had access to it. This is a new burden placed on the State to disprove something that is within the knowledge of a defendant—an impossible burden.

From the majority opinion it appears practically useless to charge anyone with possession of marihuana in an aeroplane or other vehicle when he claims others had access to it.

The jury heard the evidence. It heard appellant testify to an unusual set of coincidences and it is requiring the State to disprove such testimony.

The majority is taking something from the proof because the State did not call Watson to the stand. The evidence shows that Watson possessed 127 pounds of marihuana when he arrived in the taxicab. He also exercised control over it and jointly possessed it with appellant. It is reasonable that most people are hesitant to incriminate themselves before their case has been tried. Would the majority require a showing that the witness was called and that he claimed his Fifth Amendment right or have deductions taken from the evidence? The failure to call Watson does not disprove any of the evidence.

The judgment should be affirmed.

## DISSENTING OPINION ON DENYING LEAVE TO FILE STATE'S MOTION FOR REHEARING

DOUGLAS, Judge.

The majority overrules the State's motion for leave to file motion for rehearing without written opinion. The motion filed by the Honorable Steve Simmons, District Attorney, and his Assistant, William J. Ellis, of El Paso County, is adopted as a dissent by this writer.

I

"In its analysis of the cause at bar, this honorable Court summed up the case

against Appellant as consisting of three points, and then discussed how the strength of each point had been 'diminished.' 'When the sufficiency of the evidence is challenged, this Court is required to view the evidence in the light most favorable to the verdict.' *Resendez v. State,* 495 S.W.2d 934, 935 (Tex.Crim.App.1973); *Pogue v. State,* 474 S.W.2d 492, 494 (Tex.Crim.App.1971). A discussion of how the evidence favorable to the verdict has been 'diminished' is not consistent with this rule. See also *Jones v. State,* 442 S.W.2d 698 (Tex.Crim.App.1969), cert. den. 397 U.S. 958, 90 S.Ct. 967, 25 L.Ed.2d 143; *White v. State,* 478 S.W.2d 506 (Tex.Crim.App.1972); *Cleaver v. State,* 498 S.W.2d 945 (Tex.Crim.App.1973); *Provost v. State,* 514 S.W.2d 269 (Tex.Crim.App. 1974). The rule in the 5th Circuit is not inconsistent with the rule heretofore followed by this honorable Court:

" 'A judgment of conviction, which is attacked on the ground of insufficient evidence, will be sustained on appeal if the evidence taken most favorably for the Government supports the verdict. . . *The Government is entitled to the benefit of all inferences sustaining the conviction that may be reasonably drawn from the evidence.' United States v. Davis,* 443 F.2d 560 (5th Cir. 1971), cert. den. 404 U.S. 945, 92 S.Ct. 298, 30 L.Ed.2d 260. (Emphasis Supplied).

*Rua v. United States,* 321 F.2d 140 (5th Cir. 1963), cert. den. 377 U.S. 969, 84 S.Ct. 1651, 12 L.Ed.2d 738.

"Not only does the above discussed rule obtain in Texas, it obtains in a virile form. In *Banks v. State,* 510 S.W.2d 592, 595 (Tex.Crim.App.1974) this honorable Court held:

" 'In reviewing the sufficiency of the evidence to support the conviction, we must view the evidence in the light most favorable to the verdict. In doing so, the verdict will be sustained if there is *any* evidence which, if believed, shows the guilt of the accused.' (Emphasis supplied).

In view of the evidence as developed, infra, there is evidence showing the guilt of Ap-

pellant herein, and this Court's opinion in the above styled and numbered cause would appear to emasculate the rule in *Banks,* supra, et al.

## II

"Another long-standing and well-settled rule seemingly eroded by this honorable Court's opinion in the case at bar is the rule that the province of the fact finder, in this case a jury, will not be invaded in retrospect on appeal. The State is led to this conclusion by virtue of this honorable Court's recitation of Appellant's exculpatory testimony concerning his meeting Watson and the fact that the airplane was left unlocked at the airport. The jury was not obliged, for example, to believe that the plane was unlocked. If this was the case, there would be no merit in this Court's assumption that others would have had access to the aircraft.

"In *Easley v. State,* 478 S.W.2d 539, 540 (Tex.Crim.App.1972), the issue was whether or not the appellant had possessed a narcotic drug. The testimony of an agent inculpated him, while the appellant testified in an exculpatory fashion, denying that he had possessed anything:

" 'The jury had before it two opposing versions of the events on the day in question and it chose to accept the testimony of Rangel and reject that of appellant. *It is the province of the jury* to pass on the credibility of the witnesses and the weight to be given their testimony.' (Emphasis supplied).

Likewise, in *Esquivel v. State,* 506 S.W.2d 613, 615 (Tex.Crim.App.1974), this Court have an expanded but not novel version of the holding in *Easley,* supra:

" 'The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. . . The jury may believe some witnesses and refuse to believe others and it may accept portions of the testimony of a witness and reject other portions.'

For example the jury could accept Appellant's testimony that Watson had hired Appellant to fly him to California, but it could

have rejected the testimony that Watson's purpose in doing so was so that he could better see the country.

"As in the case at bar, in *Hines v. State,* 495 S.W.2d 252 (Tex.Crim.App.1973), appellant's defense was one of mere presence and that he was merely in pursuance of some lawful and innocent design. This Court held at page 255 of *Hines,* 'The jury did not choose to believe appellant, and it is the sole judge of the credibility of the witnesses and the weight to be given their testimony.' The effect of this honorable Court's holding in the case at bar, on the contrary, is to require the State to disprove Appellant's testimony. This court has previously held that the fact finder's ability to believe and disbelieve is not affected by an appellant's offer of exculpatory evidence. *Morris v. State,* 411 S.W.2d 730 (Tex.Crim.App.1967). In *Banks v. State,* supra, appellant's attorney, during cross-examination, managed to cast doubt on an eye-witness' identification of appellant, however this Court held at page 595:

> " '. . . it is the province of the jury to judge the credibility of the witnesses and the weight to be given their testimony and it may resolve or reconcile conflicts in the testimony, accepting or rejecting such portion thereof as it sees fit.'

Consequently, we have no way of knowing what portions of the Appellant's testimony the jury believed and what portions it did not, but it is obvious from its verdict that it disbelieved a large part of it. 'The conflict in the testimony was resolved by the jury who was the trier of facts, the judge of the credibility of the witnesses and weight to be given the testimony.' *Solis v. State,* 492 S.W.2d 561 (Tex.Crim.App.1973). In *Rodriguez [Rodriquez] v. State,* [544 S.W.2d 382 (Tex.Cr.App.)], No. 50,659, handed down on the same day as the opinion in the case at bar, this honorable Court correctly recognized its appellate function:

> " 'The issue before this Court is not the truth of Appellant's testimony; that is for the jury.

> " 'Whether the events actually happened that way in this case was a question for the jury. . . .

> " 'We reiterate that the truth of appellant's testimony is not at issue here and we express no opinion on who was telling the truth.'

Further in *Hernandez v. State,* [538 S.W.2d 127 (Tex.Cr.App.)], No. 51,952, the trial court was the fact finder. On the same date as its holding in *Rodriguez [Rodriquez],* supra, this Court held:

> " 'The defense testimony offered by the appellant was before the court for its consideration. The Court, as trier of the facts, is the sole judge of the credibility of witnesses and the weight to be given their testimony and may accept or reject all or any part of any witness' testimony.'

### III

"Realizing the affirmative link which the State must show between appellant and the contraband, the State will review prior decisions of this honorable Court which have demonstrated the link and then compare them with the facts in the case at bar.

"In *Ross v. State,* 486 S.W.2d 327, 328 (Tex.Crim.App.1972):

> " 'Appellant's third contention [was] that the evidence [was] insufficient to show that appellant knew that the substance found in the pipe and in the cigarette butts was contraband. We call attention to . . . the smell emanating from within the automobile which was identified as marihuana by the arresting officers.'

See also *Aldridge v. State,* 482 S.W.2d 171 (Tex.Crim.App.1972). Interestingly, in neither *Ross* or *Aldridge,* supra, contrary to this honorable Court's opinion in the case at bar, was it required or held that an appellant be shown to know the smell of marihuana, or that the smell of marihuana would be known only to an expert.

"In *Buntion v. State,* 476 S.W.2d 317 (Tex.Crim.App.1972), where marihuana cigarette butts were found in an automobile being driven by appellant, but in which a

passenger was also riding, this Court found the requisite affirmative link at page 319:

> " 'It is undisputed that appellant was driving the car. Appellant testified she was the owner of the car. We deem the evidence sufficient to support the conviction. The unlawful possession of marihuana need not be exclusive to reflect a violation of the law.'

"In *Hernandez*, supra, the court found an affirmative link under facts far less connecting in nature than any cited cases as well as the case at bar, and more exculpatory than the instant case: the car in which the marihuana was found did not belong to appellant, the marihuana was not in a part of the car to which appellant had access while it was moving, the car had roaches and ashes in an ashtray on the dash, appellant testified denying all knowledge of the marihuana, and appellant's brother testified saying the marihuana was his not appellant's, and that appellant had no knowledge of the marihuana. Although *Hernandez* involved a revocation of probation, this Court held that the burden to show an affirmative link is the same whether the main proceeding be a revocation or a trial on the merits. In *Hernandez*, the appellant had pointed out the absence of certain links that have been recognized in the past as sufficient (e. g. no evidence of an odor of marihuana in the car). This honorable Court responded to Appellant's contention:

> "However, the absence of the above facts and circumstances is not evidence of appellant's innocence to be weighed against evidence tending to connect appellant to the marihuana. The issue is whether there is sufficient evidence linking the appellant to the marihuana to support the reasonable reference that he was knowingly in possession of marihuana."

The Court noted that with marihuana on the dash, it strained credulity to suggest that the driver (appellant) could not see it—in spite of the fact that there was no showing that appellant was familiar with marihuana so as to recognize it on sight.

"At bare minimums, the case at bar contains two factors linking Appellant to the marihuana: cigarette butts in the ashtray (*Buntion,* supra), and the smell of marihuana emanating from within the plane which was his and which he was piloting (*Ross* and *Aldridge,* supra). The credulity of the State is strained at the thought that Appellant could not smell 127 pounds of marihuana in the same compartment of his airplane in which he was riding. Further, the evidence is far stronger than *Hernandez* wherein appellant not only denied knowledge but where another witness, against his own penal interest exonerated appellant. Just as the judge was the trier of facts in *Hernandez*, so was the jury in the case at bar. Consequently, when the evidence is viewed in the light most favorable to support the verdict and when the fact-finding authority of the jury is left unfettered, the evidence is sufficient to support the verdict.

"The fact that the State did not call the unconvicted accomplice, Watson, was, but ought not to have been, charged against it. Under the facts of the case at bar there could be no legal presumption that the testimony would have been exculpatory as to Appellant. *Roberts v. State,* 489 S.W.2d 893 (Tex.Crim.App.1972). Likewise, in view of Watson's 5th Amendment rights, there could be no practical presumption that his testimony would exculpate Appellant. Having proven a prima facie case, Appellee was under no duty to call Watson.

### IV

"This honorable Court also held, in the case at bar, that the trial court erred in not giving a requested circumstantial evidence charge on knowing possession. The State's research has revealed that only when the fact of possession must be shown circumstantially is such a charge required. In all events, the jury was affirmatively charged that it must find, beyond a reasonable doubt, that Appellant's possession was intentional and *knowing.*

"When the main fact is proved by direct testimony, as it was in the case at bar, and only the question of a defendant's intent is

to be inferred from the circumstances, a charge on circumstantial evidence is not required. *Littleton v. State,* 419 S.W.2d 355 (Tex.Crim.App.1967); cert. den. 389 U.S. 887, 88 S.Ct. 115, 19 L.Ed.2d 188 (1967); reh. den. 389 U.S. 998, 88 S.Ct. 484, 19 L.Ed.2d 507 (1967). Knowledge is no more nor less a subjective state of mind than intent, and if no circumstantial evidence charge is required as to one, it is difficult to see the basis for requiring it as to the other. This is especially true when it is remembered that the jury was charged that, before it could convict, it must believe that Appellant's possession was knowing. Must a charge on knowledge now always be given?

"WHEREFORE, premises considered, the State prays that its Motion for Rehearing be granted and the judgment in the above styled and numbered cause affirmed."

The motion should be granted and the conviction should be affirmed.