Robert L. MARSH, Appellant,

v.

The STATE of Texas, Appellee.

No. 169–82.

Court of Criminal Appeals of Texas, En Banc.

Oct. 24, 1984.

Don Ervin, Robert W. Tarrant, Houston, for appellant.

William Meitzen, Dist. Atty., and Thomas R. Culver, III, Asst. Dist. Atty., Richmond, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

A jury convicted appellant of possession of over four ounces of marihuana and assessed punishment at ten years' confinement and a $5000.00 fine. The Court of Appeals for the First Supreme Judicial District, 630 S.W.2d 305 affirmed the conviction. We granted appellant's petition for discretionary review in light of *Robbins v. California*, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), but *Robbins* has since been disapproved. See *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). We will discuss the questions raised by appellant in light of applicable law.

On the evening of March 27, 1978, Texas Ranger Ray Scholton was fishing on the 4444 ranch in Fort Bend County. Scholton was permitted to fish on the ranch in return for keeping an eye out for trespassers and cattle thieves. Shortly before midnight Scholton saw "a lot of activity" near the ranch's grass landing strip, about ¼ of a mile away. He saw several people whom he could not identify, a Cadillac, and a camper-equipped pickup truck near the strip. He also saw flares and flashlights.

Scholton testified that he did not know whether the people he saw were trespassing or had permission to be on the land, but he suspected illegal activity.

Scholton left the ranch and drove four miles to Simonton, where he telephoned the Fort Bend County Sheriff's Department. He drove back on Guyler Road toward the ranch. He stopped next to some cattle pens 200 yards or less from the landing strip, stayed there for 2 or 3 minutes, and saw an airplane circling low overhead.

Scholton admitted on cross-examination that he had written in his offense report that Robbie Pearson, the son of the owner, seemed to be in control of the premises. He testified that a week earlier Pearson had told him that he was waiting for a friend to fly an aircraft into the ranch at night. The record is not clear whether this particular night was supposed to be the night immediately preceding the offense or a night a week prior to the offense. However, Scholton knew that the friend had not arrived by the time of the instant events.

Scholton left and drove about four miles to Wallis, where he exchanged his pickup truck for a car with a police radio. He picked up Deputy Sheriff Larry Lee and drove back on Guyler road toward the ranch. He parked the car on the side of the road about 1½ miles from a gate entrance to the ranch.

Soon after this, Scholton and Lee saw the headlights of two vehicles coming from the ranch toward their car. When they passed Scholton's car he identified them as a Cadillac and a pickup truck with camper. Scholton testified that he recognized the Cadillac as the same car he had seen on the ranch a week before. Pearson and another man to whom Scholton had been introduced had been standing beside the Cadillac at that time and Scholton testified he knew that the car was permitted on the ranch at that time.

Scholton and Lee followed both vehicles and continuously tried, without success, to contact a marked police car to stop them. After a few miles the Cadillac continued east and the pickup turned north; Scholton followed the truck.

Appellant was the driver of the pickup truck. He testified that he had pulled off the road and stopped because the officers flashed the lights of their car and drove up very close to his rear bumper. Scholton and Lee testified that they did not flash their lights and that appellant had pulled off the road of his own accord.

Scholton pulled in behind the truck, approached the driver's side with a rifle, and ordered the driver out. Lee approached the passenger side of the truck with his gun in hand and ordered the passengers out. Appellant, another man, and their wives, were in the pick-up. Scholton testified that at that time none of the people were free to leave. Scholton asked appellant for identification. Appellant stated that he did not have any. Scholton said he wanted to find out if they had violated the law and "had a truck load of contraband." Scholton also testified that he shined his flashlight into the back of the pickup and observed a tarpaulin covering some type of cargo. Appellant told Scholton that the vehicle contained feed or fertilizer. Scholton asked appellant to open the rear of the pickup. Appellant refused and asked if Scholton had a search warrant. Appellant asked Scholton to read him his Miranda rights and eventually the camper shell was opened.

Scholton claimed that he wanted the back opened for his own personal safety and because he felt there might be contraband. Lee testified that he smelled "what appeared to be marijuana" coming from the

back of the truck, although he could not see it. Lee testified that he noticed this odor of marihuana at the time the passengers were getting out of the pickup, before the camper shell had been opened. Subsequently the camper was opened and six bales of marihuana wrapped in plastic covering with lettering that said "Matamoras Fertilizing Company" were found. Scholton said he first smelled marihuana at the time the camper top was opened.

Appellant contests the initial stop by Scholton and Lee. The testimony that the pickup had pulled off the road and stopped and that the officers following the car just pulled in behind and approached the car with guns drawn does not alter the nature of the investigation as a "stop." *Ebarb v. State*, 598 S.W.2d 842 (Tex.Cr. App.1979). When the officers ordered appellant and the others out of the truck and, as Scholton testified, they were not free to go, they had been "seized". *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The officers' actions in observing, following, and detaining appellant must meet the standard necessary to justify the intrusion of an investigative stop. That standard requires that the law enforcement officer have specific, articulable facts, which in light of his experience and general knowledge, together with rational inferences from those facts, would reasonably warrant the intrusion on the citizen. *Terry v. Ohio*, supra; *Williams v. State*, 621 S.W.2d 609 (Tex.Cr.App.1981); *Brem v. State*, 571 S.W.2d 314 (Tex.Cr.App.1978). Mere suspicions do not meet this test, *Hull v. State*, 613 S.W.2d 735 (Tex.Cr.App.1981), but neither is absolute certainty required. *Armstrong v. State*, 550 S.W.2d 25 (Tex. Cr.App.1976, opinion on rehearing 1977).

The specific and articulable facts from which Scholton drew his inference that illegal activity might be occurring and investigation was necessary, including the lateness of the hour of the plane's arrival, the activity consistent with unloading cargo in the dark by several persons, the caravan and flares indicating planned activity by several persons, rather than a random or

emergency landing, and the knowledge that clandestine rendezvous with aircraft in remote locations in the dead of night are standard practice in the drug importation trade, gave rise to a rational inference that reasonably warranted the intrusion of the investigative stop of appellant.

Appellant next contends that the trial court erroneously admitted into evidence the marihuana which was the product of an illegal arrest and search. He contends that the search of the pickup was unlawful because no probable cause existed to search and no exigent circumstances were present to permit the warrantless search and seizure.

Having determined that the initial stop was proper, we find as a consequence, given that deputy Lee detected the odor of marihuana coming from the pickup, that the search was also proper. *Razo v. State*, 577 S.W.2d 709 (Tex.Cr.App.1979); *Attwood v. State*, 509 S.W.2d 342 (Tex.Cr.App. 1974); *United States v. Ross*, supra.

Appellant finally contends that the evidence was insufficient to sustain the conviction because the State did not prove that appellant knowingly possessed the marihuana. To support a conviction for possession of marihuana the evidence must affirmatively link the accused to the contraband in such a manner, and to such an extent, that a *reasonable inference* may arise that the accused knew of the contraband's existence and of its whereabouts. *Christopher v. State*, 639 S.W.2d 932 (Tex. Cr.App.1982); *Sewell v. State*, 578 S.W.2d 131 (Tex.Cr.App.1979).

The oft-stated rule in possession cases is the following:

It has been consistently held in this State that possession means more than just being where the action is; the State must prove two elements: (1) that the accused exercised care, control, and management over the contraband, and (2) that the accused knew the matter possessed was contraband .... Therefore, there must be additional independent facts and circumstances which affirmatively link the

accused to the contraband in such a manner that it can be concluded he had knowledge of the contraband as well as control over it.

Both prongs of the test must be met. Examples of the kind of *additional facts* and circumstances which can indicate knowledge and control when an accused is in a *vehicle* usually involve a combination of facts, e.g., *Deshong v. State*, 625 S.W.2d 327 (Tex.Cr.App.1981), (marihuana in open or plain view, marihuana conveniently accessible to the driver, and the driver shown to be the owner of the car); *Duff v. State*, 546 S.W.2d 283 (Tex.Cr.App.1977), (a strong odor of marihuana in the car, either recently smoked or raw, contraband found on the accused, or the accused under the influence of marihuana, and conflicting stories as to who controlled the car). See also *Johnson v. State*, 625 S.W.2d 330 (Tex.Cr. App.1981); *Olguin v. State*, 601 S.W.2d 941 (Tex.Cr.App.1980).

*Reyes v. State*, 575 S.W.2d 38 (Tex.Cr. App.1979) presents a fact situation similar to the instant case. In *Reyes* the defendant was a passenger in a four-wheel drive Plymouth Trail Duster. The sheriff smelled the odor of "bulk type raw marihuana" emanating from the vehicle. The driver was told to open the back of the vehicle. A tarpaulin covered several large plastic-wrapped bundles of marihuana, 660 pounds in all. There was no partition between the passenger compartment and the rear of the vehicle where the marihuana was found. This Court noted several factors in concluding that the evidence was insufficient to affirmatively link the defendant to the contraband: there was no evidence that appellant was under the influence of marihuana or other drug; there was no evidence he had any contraband on his person; he did not own the vehicle; the marihuana was wrapped in plastic bags and covered with a tarpaulin; and, perhaps most significantly concerning the odor, "While Deputy Perez may have acquired the skill of detecting the odor of marijuana through his narcotic investigations, it was not shown that the appellant knew the smell of marihuana and such expertise may

not be presumed. *Armstrong v. State*, 542 S.W.2d 119 (Tex.Cr.App.1976)."

Much the same can be said of appellant in the present case. Appellant was the driver of a pickup truck which had a camper shell over the bed of the pickup. There is no evidence of whether the window was open in the partition between the interior cab of the truck where the appellant was sitting and the back where the marihuana was found. Appellant did not own the truck, and he told Scholton that the truck contained "feed or fertilizer." The marihuana was found wrapped in sealed plastic bundles bearing the words "Matamoras Fertilizer Company." There is no evidence that any contraband was found on appellant's person or that appellant was under the influence of any drug.

Despite these facts, the instant case is distinguishable from *Reyes* because there are additional facts and circumstances not present in *Reyes* that suffice to link appellant to the marihuana so that a reasonable inference arises that appellant had knowledge that the contraband was marihuana.

The discovery of marihuana in *Reyes* came as a result of a stop for a speeding violation. There was no evidence about where the car had come from or about the passenger of the car. The finding of insufficiency rested on the lack of evidence to prove that the defendant recognized the odor as marihuana and thus knew that the contraband was marihuana.

In the instant case there are incriminating facts other than the strong odor of marijuana. Scholton saw the truck near the landing strip on the ranch, in the area where "a lot of activity" was taking place. He saw people with flares and flashlights and saw a plane circling low over the landing strip. He suspected illegal activity was occurring. Scholton saw the same truck leaving the ranch and appellant was driving when it was stopped a short time later. From these facts surrounding the stop of the vehicle it is a rational inference that appellant had been present at the landing strip when all the activity took place. This

inference, together with the previously described circumstances of the activity on the ranch in the middle of the night and the circumstances of the stop, provide the necessary additional independant facts and circumstances which affirmatively link the appellant to the contraband in such a manner that it can be concluded he had knowledge of the contraband as well as control over it. Unlike *Reyes*, in which odor alone was the link, the instant case presents a stop with a context in which the stop and discovery of the marihuana must be viewed. From these additional facts a rational inference arises that appellant knew that marihuana was in the truck. Seen in that context, it can be concluded that the evidence sufficiently shows appellant's knowledge of the marihuana. See also *Christopher v. State*, 639 S.W.2d 932 (Tex.Cr.App.1982).

The judgment of the court of appeals is affirmed.

CLINTON, Judge, dissenting.

Simply stated, the majority would have it that every night a peace officer sees an airplane "circling low overhead" near a private landing strip where there are flares and flashlights and several persons in and about motor vehicles, he may later intrude into the personal security of the driver and occupants of the vehicles without violating constitutional and statutory restraints against unreasonable seizures.

Calling it "the intrusion of an investigative stop," the majority says that it was warranted by a rational inference drawn "from specific and articulable facts" that "illegal activity might be occurring and investigation was necessary." However, the majority does not consider "the whole picture," and even the "facts" selected by the majority are consistent with innocent behavior of persons involved in any other midnight arrival of an airplane on a private landing strip.

*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is the source for the

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indi-

general proposition stated by the majority. *Id.*, U.S. at 21, S.Ct. at 1879. But the Supreme Court of the United States and this Court as well have since made clear that an investigative stop must be justified by some objective manifestation that the person stopped "is, or is about to be, *engaged in criminal activity.*" [1] *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 69 L.Ed.2d 621 (1981); *Hull v. State*, 613 S.W.2d 735, 739 (Tex.Cr.App. 1981); *Armstrong v. State*, 550 S.W.2d 25, 31 (Tex.Cr.App.1977). "That a generalized suspicion will not suffice" was demonstrated by this Court in *Hull v. State*, supra, relying large part on teachings by the unanimous Supreme Court in *Cortez*, supra.

First off, writing for the Supreme Court the Chief Justice noted past usage of "a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person," including terms like *"articulable reasons"* and "founded suspicion;" but they are not "self-defining" and, more to the point, *"they fall short of providing clear guidance* dispositive of the myriad factual situations that arise." 449 U.S. at 417, 101 S.Ct. at 695. Thus, that proposition which the majority is today applying is passe.

Continuing the Chief Justice said:
"But the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have *a particularized and objective basis* for suspecting the *particular* person stopped of *criminal activity.* [Citations omitted.]" *Ibid.*

Turning to explicate what had just been established, the Chief Justice pointed out:
"The idea that an assessment of the whole picture must yield particularized suspicion contains two elements, *each of which must be present before a stop is permissible.* First, the assessment must

cated.

be based upon all the circumstances. * * * *"2

"The second element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must raise a suspicion that *the particular individual being stopped is engaged in wrongdoing.* Chief Justice Warren, speaking for the Court in *Terry v. Ohio,* supra, said that '[t]his demand for specificity in the information upon which police action is predicated is *the central teaching of this Court's Fourth Amendment jurisprudence.*' [Citations omitted.]" *Id.,* 449 U.S. at 418, 101 S.Ct. at 695.[3]

The opinion of the Supreme Court then demonstrates that the principles just discussed are implicated in that cause by pointing out in meticulous detail how "fact on fact and clue on clue afforded a basis for the deductions and inferences that brought the officers to focus on [a suspect]."

Since the majority does not—indeed cannot—follow the *Cortez* formulation, I respectfully dissent.

TEAGUE and MILLER, JJ., join.

---

**2.** In making that assessment a trained officer will draw inferences and make deductions from available data such as objective observations, police reports and consideration of modes or patterns of operation of kinds of lawbreakers.

**3.** Emphasis is by Chief Justice Burger.